[Civ. No. 13489. Second Dist., Div. One. Aug. 24, 1942.]

FRANCIS D. STANHOPE, Respondent, v. LOS ANGELES COLLEGE OF CHIROPRACTIC (a Corporation), Appellant.

Max E. Gilmore for Appellant.

David L. Sefman, Leonard Wilson and Nat A. Rosenstein for Respondent.

YORK, P. J.—Plaintiff instituted the instant litigation against the defendants above named to recover damages for personal injuries alleged to have been sustained by him as a result of the alleged malpractice of defendants in examining, treating and X-raying him after he had sustained a broken back in an accident. Defendant corporation in its answer admitted that Dr. Metzinger was its employee and denied that Dr. Joyant was its agent or employee. By way of affirmative defenses, said corporation pleaded unavoidable accident and contributory negligence.

When the cause came on for trial and before the jury was drawn, plaintiff dismissed the action as to defendant Dr. Charles Henry Wood. At the conclusion of the trial, the jury brought in its verdict for plaintiff and against defendants Dr. C. J. Joyant and Los Angeles College of Chiropractic, assessing plaintiff's damages at $3,500. Thereafter the trial court denied defendant corporation's motion for judgment notwithstanding the verdict or for a new trial, whereupon defendant corporation took this appeal from the judgment as well as from the order denying said judgment.

A brief résumé of the facts disclosed by the evidence, in the aspect most favorable to respondent, follows:

Between 9:30 and 10:00 in the morning of March 13, 1940, respondent, then aged 63 years and retired, sustained a broken back in an accident which occurred in the cellar of his home. When respondent attempted to move a water heater six feet high, two feet in diameter, and weighing three hundred fifty pounds, it swung off balance knocking him flat on his face upon a hard dirt and cement floor and fell with crushing force on the lower portion of his back. His associate removed the heater from respondent's back, and after remaining on the

floor screaming with pain for about five minutes, respondent was taken by George K. Phoenix in the latter's automobile to the Los Angeles College of Chiropractic which was located two blocks away. Respondent had never before been treated at said institution and knew no one connected therewith. Defendant Dr. Metzinger was called into the clinic room by Mr. Phoenix, who was a former student of the college. After questioning respondent regarding his injury, Dr. Metzinger placed him on a chiropractic adjustment table for examination, during which time respondent was lying on his face supported by his face and knees with a hassock or cushion underneath his abdomen. At the conclusion of such examination, defendant Dr. Metzinger told respondent there were no bones broken; that he had a bad sprain and should rest at home for a few days; also, that he should have some X-ray pictures taken. Respondent in company with Mr. Phoenix was taken into the X-ray laboratory operated by the defendant Dr. Joyant which occupied space on the ground floor of the building which housed the college. Mr. Phoenix explained to Dr. Joyant, according to the latter's testimony, that respondent had been in an accident and that Dr. Metzinger had examined him, had found no bones broken but had suggested X-ray pictures; and that he (Phoenix) would like Dr. Joyant to make an anterior-posterior X-ray of respondent's pelvis, including the lumbar vertebrae and the lower dorsal vertebrae. Because respondent was suffering excruciating pain, it was impossible to get him to lie flat on the table, so Dr. Joyant placed a pillow about four inches thick under respondent's body. When the pictures were taken respondent was propped up with his buttocks flat on the table and his feet and knees folded up because he could not straighten his legs. Respondent remained in the laboratory while Dr. Joyant developed the X-rays at which time the latter advised respondent, "Well, this confirms the doctor's diagnosis. There are no bones broken." Respondent was then taken home where he remained in bed suffering great pain for three days. On the fourth day another doctor was called who examined respondent and had him removed to the General Hospital where both lateral and anterior-posterior X-rays were taken and several doctors examined him, it being discovered that he had sustained a compression fracture of the twelfth dorsal vertebra.

Dr. Marianne Scarborough, a doctor of medicine connected with the General Hospital, who personally attended and ren-

dered medical services to respondent from March 29, 1940 to November 1, 1940, testified that the accepted practice in this community, insofar as taking X-rays for a possible spinal injury is concerned, where the patient to be X-rayed is in great pain, is always to take both lateral and anterior-posterior views. This testimony was corroborated by other doctors who testified at the trial herein.

Appellant urges (1) that there is no evidence that Dr. Joyant was an employee or agent of appellant on March 13, 1940; (2) that the trial court committed prejudicial error in its instructions to the jury; (3) that Dr. Joyant was not negligent and that his negligence, if any, did not proximately cause damage to respondent; (4) the verdict is excessive and patently the result of passion and prejudice; and (5) the trial court erred in denying appellant's motion for judgment notwithstanding the verdict.

Appellant denied in its answer to the complaint herein that Dr. Joyant was either its agent or its employee at the time respondent was treated in its institution. Upon the issue thus created, the following testimony was presented at the trial:

Defendant Dr. Charles Henry Wood, who had been the president and a director of appellant college for twenty-eight years, testified that the college was housed in two buildings at 920 Venice Boulevard, in the city of Los Angeles, one of which was a three-story building containing 17,000 square feet; that there were three store rooms on the ground floor of said building facing on Venice Boulevard; that as one faced said building the store room on the left was occupied by the Los Angeles X-ray Laboratory; that the middle store room served as a waiting room for the college, and the store room on the right was occupied by a chemical laboratory; that on March 13, 1940, the equipment in the X-ray laboratory personally belonged to the witness, who had owned the laboratory for many years. On March 13, 1940, the said X-ray laboratory was operated by Dr. Joyant who had complete control of it; that said witness together with Dr. Royce "founded that laboratory and operated it, and I made an arrangement with Dr. Joyant that in return for doing my work on my patients—I have quite a large clientele—and in return for doing the work for me and doing the teaching X-ray analysis and diagnosis to the student body, that he would not be compelled to pay any rent or any telephone service, or any janitor service, but there were no fees collected

from Dr. Joyant for the college. That was just an understanding that in return for teaching these subjects, and he did that for a considerable time, but was not at the time you mentioned.'' Further, that no portion of the fees collected by Dr. Joyant was received by the college; that when patients of the clinic of the college had X-rays taken at the Los Angeles X-ray Laboratory, they paid Dr. Joyant whatever fee he exacted; that there was ''just an oral agreement'' between Dr. Joyant and the witness with regard to the X-ray laboratory, which could be cancelled at will by either party.

Dr. Wilma Churchill von Walden testified she was the secretary and treasurer and a director of the Los Angeles College of Chiropractic; had charge and control of the faculty of the college; that on March 13, 1940, Dr. Joyant operated an X-ray laboratory in a portion of the building occupied by the college; that he taught X-ray analysis at the college when that subject appeared in the school curriculum; that the name of Dr. Joyant's laboratory appeared on the front window thereof as follows: ''Los Angeles X-ray Laboratory.''

Dr. Clement J. Joyant testified that he was a doctor of chiropractic and an X-ray technician and on March 13, 1940, operated the laboratory known as ''Los Angeles X-ray Laboratory'' at 918½ Venice Boulevard, occupying space on the ground floor of a building which also housed the Los Angeles College of Chiropractic, the entrance to the latter being at 920 Venice Boulevard; that on his laboratory door facing Venice Boulevard was this sign: ''Entrance, Los Angeles X-ray,'' and on the front window facing Venice Boulevard was the sign reading ''The Los Angeles X-ray Laboratory— Clement J. Joyant''; that he had operated said laboratory continuously from 1930; that he had an agreement with Dr. Wood that whenever the X-ray course appeared in the college curriculum he would teach it for the use of the space occupied by his laboratory, light, gas and telephone service; that said agreement was made in 1929 and continued in force and effect through March, 1940; that he made X-rays for any of the doctors in the field who referred their patients to him; that the college did not prescribe the charges he made for X-rays, nor did it dictate or prescribe rules for him relating to the conduct of his X-ray business, nor the hours during which the laboratory was to be open for business.

Respondent Stanhope testified that prior to March 13, 1940, he had never been treated at the Los Angeles College of Chiropractic and did not know anyone connected with said

institution; that after Dr. Metzinger had treated him he was carried into an X-ray room; that he had never been in the building before and was not acquainted with the premises; that when they arrived in the X-ray room, "I don't think anybody was in there because I saw within a few seconds, ten or fifteen seconds, maybe, I saw a doctor come out of an inside room." When he was leaving Dr. Joyant told respondent that the usual charge would be $15 and respondent thought it included both the X-rays and the examination made by Dr. Metzinger. "I didn't know whether I had to pay Dr. Metzinger or pay Dr. Joyant or pay a cashier, or what. He (Joyant) simply asked me for $15.00, or said the charges would be $15.00 . . . But owing to Mr. Phoenix's connection with the college, that they were going to cut it in two, fifty per cent. My bill would be $7.50."

"An agency is ostensible when the principal intentionally or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him." (§ 2300, Civ. Code.) In this connection it is urged by appellant that "before a recovery can be had against a principal for the alleged acts of an ostensible agent, three things must be proved, to-wit:" (quoting from *Hill* v. *Citizens Nat. Tr. & Sav. Bank,* 9 Cal. (2d) 172, 176 [69 P. (2d) 853]) "[First] The person dealing with the agent must do so with belief in the agent's authority and this belief must be a reasonable one; [second] such belief must be generated by some act or neglect of the principal sought to be charged; [third] and the third person in relying on the agent's apparent authority must not be guilty of negligence. (1 Cal. Jur. 739; *Weintraub* v. *Weingart,* 98 Cal. App. 690 [277 Pac. 752].)"

An examination of the evidence hereinbefore referred to which was produced on the issue of agency convinces us that respondent has met the requirements enumerated in the Hill case. So far as the record reveals appellant did nothing to put respondent on notice that the X-ray laboratory was not an integral part of appellant institution, and it cannot seriously be contended that respondent, when he was being carried from room to room suffering excruciating pain, should have inquired whether the individual doctors who examined him were employees of the college or were independent contractors. Agency is always a question of fact for the jury. The evidence produced on this issue is sufficient to support the jury's implied finding that Dr. Joyant was the ostensible agent of appellant college.

Appellant complains of error in the giving of certain instructions to the jury, on the general ground that "There was no evidence that Dr. Joyant was an employee of the college, so it was error to submit that issue to the jury."

Without discussing each of the instructions objected to, suffice to say that this court has examined the fifty or more instructions given and is convinced that the jury was fully and impartially informed as to the principles of law applicable to the facts established by the evidence without resulting prejudice to appellant. (§ 4½, art. VI, Cal. Const.) Moreover, as heretofore stated, the evidence was sufficient on the question of agency to present that issue to the jury.

Appellant urges that "there can be no recovery against an X-ray technician unless two facts are established:

" (a) Negligence on the part of the technician;

" (b) Evidence that the pictures were used by physicians in treating plaintiff or as a diagnostic aid."

The record herein reveals that Dr. Joyant did not follow the accepted practice of skillful roentgenologists in this community of taking a lateral X-ray wherever an injury to the spine is indicated. Additionally, he developed and read the X-rays immediately after he took them while respondent was still in the room, at which time he made the positive statement, "Well, this confirms the doctor's diagnosis. There are no bones broken." Therefore, it must be assumed that the X-rays were taken as a diagnostic aid and that if Dr. Joyant had discovered through that medium that respondent's back was broken, he would have made known that fact so that appellant's doctors could have given further attention to respondent's injury.

Dr. Scarborough testified that in her opinion, as an expert, the period of respondent's convalescence was greatly lengthened because of the lack of care received by him at the hands of defendants; that the average case of spinal fracture with a compression such as respondent suffered, and for a man of his age, would require the back to be placed in a cast for four months and that such patient is usually back at work in six months, whereas respondent was still convalescing from his injury at the expiration of one year and eight months.

The evidence adduced at the trial herein amply supports the judgment based on the jury's verdict that Dr. Joyant was negligent and that such negligence proximately caused damage to respondent.

The assessment of damages is first of all the province of the jury, and secondly, that of the trial court when passing upon a motion for a new trial, therefore, an appellate court will not disturb the verdict unless it is so grossly excessive as to immediately suggest that it was the result of passion, prejudice or corruption on the part of the jury. (*Peckham* v. *Warner Bros. Pictures,* 42 Cal. App. (2d) 187 [108 P. (2d) 699] ; *Loeb* v. *Kimmerle,* 215 Cal. 143 [9 P. (2d) 199].) Moreover, the jury's award of damages cannot be set aside on appeal where there is nothing to suggest that the jury acted through passion, prejudice or corruption. (*Osrowitz* v. *Market Investment Co.,* 40 Cal. App. (2d) 179 [104 P. (2d) 681].)

From what has been said, it follows that there was no error in the denial of appellant's motion for judgment notwithstanding the verdict.

The judgment and order appealed from are, and each of them is, affirmed.

Doran, J., and White, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 22, 1942.