UNITED FUEL GAS COMPANY, Appellant,

v.

Jack JUDE, Appellee.

Court of Appeals of Kentucky.

Feb. 2, 1962.

Rehearing Denied April 20, 1962.

J. K. Wells, Paintsville, C. E. Goodwin, Charleston, W. Va., for appellant.

Clyde Miller, Louisa, for appellee.

STEWART, Chief Justice.

This appeal questions the judgment of the lower court in cancelling an oil and gas lease as to the interest therein of appellee, Jack Jude.

The parents of appellee owned a tract of land in Martin County, and by deeds dated September 20, 1942, the land was divided by them among their children. Appellee, a son, was given 30 acres, with the oil and gas rights reserved to his parents during their lifetime. On March 8, 1950, an oil and gas lease was executed to appellant, United Fuel Gas Company, by appellee's mother (the father being then deceased) and by some of the children, but not by appellee.

Buddy Stepp, appellant's local agent who was instructed to contact the various members of the family and secure their names to the lease, was uncertain whether the children were necessary parties to the lease and, when he went to appellee's home for his signature and found he was out of the state, he had appellee's son, Nathan, sign his father's name to the document. Stepp then certified as a notary public that the lease was executed and acknowledged before him by appellee.

In the fall of 1951, appellant brought in a producing well on appellee's 30-acre tract. During the boring of the well, appellee worked for the contractor employed by appellant to drill it and made no objection to the performance of this work. After gas was found he commenced taking it for use in his home. When some six months later, appellant attempted to turn gas from the well into its transmission line for marketing purposes, appellant intervened, claiming exclusive ownership of the well. Appellant thereupon filed suit and obtained a restraining order to prohibit his interference with its operation. Appellee answered, setting up his title to the oil and gas, subject to his mother's life estate, and counterclaiming for damages of $1500 for gas already removed and for injury done to his farm in making the entry thereon and in drilling the well. No proof was introduced as to damages because appellee asserted he should have a jury trial to determine such a demand.

The judgment refused to grant injunctive relief and ordered the lease set aside as to appellee. The judgment recited it was final as to these two holdings, thereby conforming to the requirements of CR 54.02.

It has been appellant's position throughout this litigation that appellee, although he knew he was not bound, affirmed the lease contract by accepting certain benefits derived from the digging of a producing well on his land; and, furthermore, that he, with full knowledge that he was free to repudiate the lease, stood by without asserting his right in this respect or without even voicing any objection while appellant, acting in good faith on such apparent acquiescence, incurred large expenditures of money which will be wholly or partially

lost if his claim is upheld. This contention is based upon the principle of equitable estoppel.

The trial court's ruling upheld appellee's theory of the case, namely, that appellant was prevented from relying on estoppel for the reason that its agent's knowledge of the latent infirmity in the lease was imputed to it. It was argued below and is maintained here that appellant, knowing full well the defect in the lease contract, should be made to suffer the consequences because it voluntarily undertook to perform and did consummate an unauthorized act.

■ The evidence discloses Stepp, whatever his reason for withholding such information may have been, did not reveal to appellant that appellee had failed to execute the lease, with the result that in point of fact appellant drilled on the tract under the assumption it had obtained full power to do so. However, a principal is affected with constructive notice of all the material facts of which his agent received or acquired knowledge while acting in the course of his employment and in reference to a matter over which his authority extended, even though the agent may fail to inform his principal thereof. See 2 Am.Jur., sec. 368, p. 286–288; Wilson Gas Utilities Corporation v. Baker, 276 Ky. 368, 124 S.W.2d 489. On the other hand a reading of appellee's own testimony leaves no doubt in our minds but that he knew appellant had no right to drill on the property without first acquiring his interest in the tract; therefore, we are prompted to conclude the trial court's finding was erroneous when it stated that appellee did not appear to be informed of appellant's lack of authority to drill.

In Virginia Iron, Coal & Coke Co. v. Campbell, 105 S.W. 129, 32 Ky.Law Rep. 40, it was held that constructive notice does not necessarily prevent a party from relying on estoppel. In that case the father, John Campbell, sold one-half of 500 acres to his son, J. G. Campbell, and in the deed of conveyance, recorded on the same day, there was neither a reservation of the minerals nor any reference made thereto. On the next day, one Horsley, an agent, purchased and paid for the mineral interest for a remote vendor of the Virginia Iron, Coal & Coke Co. John Campbell, the father, conveyed the minerals in the whole tract to Horsley's principal for an agreed price. J. G. Campbell, the son, received the check for the sale, his father then being absent, and made no mention of his ownership of a part of the tract. Afterwards he made claim to a one-half portion of the minerals against the Virginia Iron, Coal & Coke Co., testifying that, although he received the check as the consideration for the conveyance in question, he merely accepted it for his father. This Court ruled the Virginia Iron, Coal & Coke Co. could not be divested of the ownership of the minerals, setting forth this reason:

"It is true in law that the purchaser had constructive notice of the lodging of this deed for record; but appellee knew that Horsley, the agent, by his conduct in paying for the mineral interest, did not have actual knowledge of that fact, or he would not have paid for it, knowing that the interest belonged to a person other than John Campbell (the father). The conduct of appellee (J. G. Campbell) in the matter operated as an actual fraud upon appellant's remote vendor."

In Fischer v. James A. Diskin Co. (James A. Diskin Co. v. City of Fort Thomas), 247 Ky. 694, 57 S.W.2d 538, (consolidated cases), the property owners stood by and made no protest, until long after the work had been completed, while the city's contractor built a sewer line across their property. This litigation was instituted to subject this same property to the satisfaction of an apportionment warrant and the suit was resisted on the ground that the city did not have title to the land on which the public improvement was placed. The property owners were held to be estopped to claim the city and the contractor had

no right to build the sewer across the land, although the latter had constructive notice a right of way had not been acquired. This Court said:

"It is a plain principle that if one having a right and seeing another about to invade it stands by in such a way as to induce the one doing the act to believe that he consents to the invasion of that right, when otherwise such person might have refrained from doing so, he is estopped from complaining of it."

In Blackburn v. Piney Oil & Gas Co., 278 Ky. 191, 128 S.W.2d 192, where the owner of land acquiesced in the drilling by the oil and gas company (the lessee of the grantee) of a gas well at considerable expense on that portion of the land which was excepted from a deed conveying the mineral rights, the landowner was held to be estopped to thereafter complain. In that case, this Court determined that, although the oil and gas company had constructive notice of the exception in the deed, when the landowner *consented* for the oil company to drill on this location it was justified in thinking he had *waived* the exception in the mineral deed.

The evidence shows that appellee's only objection to the lease was the amount of the delay rentals, which payments ceased when the well was brought in and which belonged to his mother as life tenant, in any event. His mother was satisfied with and executed the lease and as a practical matter appellee could not lease to anyone without her joining in. Even if the judgment had been adverse to him, he would still have had all that he could have reasonably hoped for at this time. Yet, if he had actually been dissatisfied with the contract, he should have made known his discontent when appellant first moved on the location; and if he had protested, appellant unquestionably would have given up the lease and moved its equipment. Thus appellee would have been restored to his original position, with his gas not leased, and appellant would have suffered only a minimal loss.

 It appears to us it would be unconscionable to permit appellee to remain silent while appellant invested its money in the drilling venture, to watch and wait until a producing well was brought in and then to renounce the contract he was supposedly a party to and claim the fruits of appellant's labor and capital. Where a party has the right to disavow, he can not delay the exercise of the right to determine whether avoidance or affirmance of an act would be more profitable to him. This is particularly true where the transaction is one of a speculative nature. See Restatement of Contracts, Vol. 2, secs. 483, 484; Twin Lick Oil Co. v. Marbury, 91 U.S. 587, 23 L.Ed. 328.

Wherefore, the judgment is reversed with directions that a new one be entered upholding appellant's oil and gas rights under its lease to appellee's 30-acre tract.