Roy BROWNING, Appellant,

v.

NORTON–CHILDREN'S HOSPITAL, d/b/a
Norton Memorial Infirmary, and Dr.
David W. Kinnaird, Appellees.

Court of Appeals of Kentucky.

Jan. 18, 1974.

John A. McCrea and George B. Walton, Louisville, for appellant.

C. Alex Rose, Louisville, for appellees.

Winfrey P. Blackburn, Jr., Frank W. Starks III, Stites, McElwain & Fowler, Louisville, for appellee, Dr. David W. Kinnaird.

FREDERICK M. WARREN, Special Commissioner.

On August 23, 1969, the appellant, Roy Browning, was suffering from some ailment in his right leg. He was rushed to Norton Children's Hospital at 2:00 o'clock in the morning on that date, and, after emergency treatment and examination, the attending physicians and surgeons determined that because of a serious blood condition in that leg it would have to be amputated. This sad and unfortunate diagnosis and information were relayed to the appellant, who then consulted with his wife respecting his decision. Subsequently appellant inquired of the doctors if the operation could be delayed until the following

Monday morning to give him more time to contemplate. He was informed that any delay might be too late, thereupon he gave his consent to and signed an authorization for such operation, which began immediately thereafter, at about 4:00 o'clock the same morning.

The operation was successful, and the appellant recovered. He admits that the operation was successful, that it probably saved his life, and that the attending surgeon performed his duties with skill and in an approved and accepted manner. However, appellant alleges he has great fear of fire, and when informed his amputated leg had been cremated suffered great mental anguish. It is for this suffering that he commenced this action to recover in damages. The trial court sustained a motion of both appellees for summary judgment for appellant's failure to state a claim upon which relief may be granted. It is from such ruling that the appellant has taken an appeal. We affirm.

Concerning the appellee, Dr. David W. Kinnaird: it was stipulated by the parties,

"That on August 23, 1969, the right leg of the plaintiff was amputated, above the knee, by Dr. David Kinnaird, was then delivered to Norton Memorial Infirmary personnel who, after appropriate examination and testing, cremated the leg."

■ Appellant conceded the operation was necessary and performed properly. Is it the duty of the surgeon to take a dismembered part of a human body into his care and custody—for the amputee? We think not. The surgeon is in charge of the operation. His obligation to appellant ceases with the successful operation, and any post-operational observations and treatments necessary. There is no claim he violated any such obligations. At the conclusion of his operation the doctor delivered the severed limb to the hospital. He did not dispose of it, or order its disposition.

With respect to the appellee, Dr. Kinnaird, the judgment of the circuit court was proper, and is affirmed.

The responsibility of appellee, hospital, gives us somewhat more difficulty.

Counsel for appellant advances some novel and persuasive arguments in his reasoning concerning the disposition of dead bodies and a dismembered part thereof. We certainly cannot disagree with his arguments, and citations in support thereof, concerning the right of an individual to provide for and direct, by testamentary document, the manner in which his remains should be disposed of after death. We also recognize that generally, in the absence of such testamentary directive, such right devolves upon the next of kin.

However, we have here a somewhat different situation, with at least two other facts or factors to consider. Here appellant was confronted with an admitted serious emergency; being informed thereof he consulted with his wife and ultimately made his own decision; he authorized and consented to the removal of his right leg; and he gave no orders and made no request respecting the disposition of such leg after its removal—nor did his wife or next of kin.

We might reasonably expect the appellant to ask, "Who would think of the ultimate disposition of his leg when confronted with such an emergency?" But neither he nor his wife made inquiry concerning it for four weeks after the operation. Is it reasonable to expect the hospital to retain a diseased, perhaps infected dismembered leg indefinitely?

■ It seems to the Court that when one consents to and authorizes an operation while a patient in a hospital (absent any specific reservation, demand, or objection to some normal procedure), he then and thereby, in effect, accepts all the rules, regulations, and the modus operandi of that hospital. After the authorized, suc-

cessfully completed operation, the surgeon delivered the severed leg to the hospital. The hospital pathologist then examined such leg to determine if the original diagnosis was correct, to ascertain if anything were overlooked, to decide if any other treatment were indicated. All of this was done for the benefit of appellant. And it was only after all post-operative requirements were met, and some reasonable time after operation that the dismembered leg was disposed of by cremation.

Some four weeks after the operation the appellant, for the first time, showed concern for and inquired respecting his lost leg. Can he now condemn the hospital for his own negligence? We think not. A hospital cannot be expected to retain and preserve an amputated extremity indefinitely—it might be diseased, infected, a health hazard.

The trial court properly dismissed the action against the hospital. Lashbrook v. Barnes, Ky., 437 S.W.2d 502 (1969); 22 Am.Jur.2d, 565 Dead Bodies, Sec. 15.

The judgment is affirmed.

All concur.