622 P.2d 463

Cristine FRIDENA, Administratrix for the Estate of Daniel Fridena, Jr., and Physicians & Surgeons Hospital, Inc., an Arizona Corporation, Appellants,

v.

Sharon J. EVANS, a married woman dealing with her sole and separate property, and Josephine C. Fenn, a single woman, Appellees.

No. 14678.

Supreme Court of Arizona,
In Banc.

Dec. 2, 1980.

Rehearing Denied Jan. 13, 1981.

Murray Miller, P. C., by Murray Miller, Phoenix, for appellant, Cristine Fridena.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P. C. by Ralph E. Hunsaker, J. Tyrrell Taber, P. Michael Whipple, Phoenix, for appellant Physicians & Surgeons Hospital, Inc.

Rawlins, Ellis, Burrus & Kiewit by James W. Hill, Phoenix, for appellees.

HOLOHAN, Vice Chief Justice.

Appellants Cristine Fridena, Administratrix for the Estate of Dr. Daniel Fridena, Jr., and Physicians & Surgeons Hospital, Inc., appeal from a judgment entered against them in a medical malpractice action. We have jurisdiction pursuant to Rule 19(e), Arizona Rules of Civil Appellate Procedure, 17A A.R.S.

The essential facts are that Sharon Evans, when she was 15 years old, was involved in a motorcycle-automobile accident in June of 1966. As a result of this accident she sustained serious injury to her right femur. Dr. Fridena, a doctor of osteopathy and an orthopedic surgeon, performed surgery on Mrs. Evans at which time he inserted a pin into her leg and hip. After surgery, it was noted that her right leg was 1½ inches shorter than her left leg.

In January of 1967, at Physicians & Surgeons Hospital, Inc., a second operation was performed by Dr. Fridena in which he attempted to lengthen her shortened right leg. The technique used by Dr. Fridena involved the bisecting of the middle of the

right femur and the inserting of a bone graft in an attempt to lengthen the leg. Rather than lengthening the leg, however, it became further shortened so that it is now 3 inches shorter than the left leg. The second operation forms the basis for the medical malpractice action brought by the plaintiffs.

Originally, suit was brought against the Estate of Dr. Fridena, Physicians & Surgeons Hospital, Inc., and Dr. Bernhard, appellees' family physician who assisted in the operation. Prior to trial, the hospital and Dr. Bernhard made a joint motion for summary judgment which was granted by the court. On appeal, the summary judgment was affirmed as to Dr. Bernhard and reversed in part as to the hospital. *Evans v. Bernhard*, 23 Ariz.App. 413, 533 P.2d 721 (1975).

The matter proceeded to trial and the hospital again moved for a directed verdict on the grounds that there was no evidence to prove that Dr. Fridena was an agent or an employee of the hospital during the performance of the operation on Mrs. Evans. The trial court denied the motion of the defendant hospital and ruled that the evidence established that the relationship between the hospital and Dr. Fridena was such that, as a matter of law, the negligence of Dr. Fridena would also be the negligence of the hospital.

At the conclusion of the trial, the jury returned a verdict against the Estate of Dr. Fridena and the Physicians & Surgeons Hospital, Inc., and awarded $300,000.00 to the plaintiff, Sharon Evans.

The issues raised on appeal are:

1. Did the trial court err in finding Physicians & Surgeons Hospital, Inc., liable for the negligent supervision of Dr. Fridena?

2. Should appellees' expert witness, Dr. Warren Colton, a medical physician and an orthopedic surgeon, have been allowed to testify concerning the standard of care applicable to Dr. Daniel Fridena, an osteopathic physician and an orthopedic surgeon?

3. Was there error in the trial court's refusal to allow the defendants to question the plaintiffs regarding a prior complaint?

4. Did the trial court abuse its discretion in allowing the plaintiffs to testify concerning conversations they had had with the now deceased Dr. Fridena?

5. Was there error in the instructions given to the jury?

6. Was the verdict excessive?

The first issue is whether the hospital should be held liable. The hospital argues that Dr. Fridena was an independent contractor and not an agent or employee of the hospital during his performance of surgery upon Mrs. Evans. The hospital contends that under the general principles of respondeat superior it should not be held liable for the negligent actions of an independent contractor.

It is true that a physician generally functions as an independent contractor because he is free to exercise his own skill and judgment in rendering medical or surgical services without interference. *See* 40 Am. Jur.2d *Hospitals and Asylums* § 28. The true issue is not, however, whether the hospital is vicariously liable as the hospital attempts to frame the issue, but whether the hospital should be held liable on the theory of negligent supervision.

The appellee contends that the hospital owes a duty to the public to only allow use of its facilities by professionally competent physicians who treat their patients with accepted medical procedures. She further argues that the hospital failed in its duty by allowing Dr. Fridena to perform the second surgery.

Traditionally a hospital was thought of as being merely the physical structure and furnishings in which physicians practiced their art. The physician was held solely responsible for the quality of medical service as opposed to the limited role of the hospital which was responsible for basic bed and board. *See* Southwick, *The Hospital as an Institution—Expanding Responsibilities Change Its Relationship with the Staff Physician*, 9 Cal.Western L.Rev. 429, 430–31

(1973). In recent years, however, the duty of care owed to the patient by the hospital has expanded. The emerging trend is to hold the hospital responsible where the hospital has failed to monitor and review medical services being provided within its walls. *See* Kahn, *Hospital Malpractice Prevention,* 27 De Paul L.Rev. 23 (1977).

Among the cases indicative of the "emerging trend" is *Purcell v. Zimbelman,* 18 Ariz.App. 75, 500 P.2d 335 (1972). In *Purcell,* the hospital argued that it could not be held liable for the malpractice of a medical practitioner because he was an independent contractor within the hospital. The Court of Appeals pointed out that the hospital had created a professional staff whose competence and performance was to be monitored and reviewed by the governing body of the hospital, and the court held that a hospital would be negligent where it had knowledge or reason to believe that a doctor using the facilities was employing a method of treatment or care which fell below the recognized standard of care.

Subsequent to the *Purcell* decision, the Arizona Court of Appeals held that a hospital has certain inherent responsibilities regarding the quality of medical care furnished to patients within its walls and it must meet the standards of responsibility commensurate with this undertaking. *Beeck v. Tucson General Hospital,* 18 Ariz. App. 165, 500 P.2d 1153 (1972). This court has confirmed the rulings of the Court of Appeals that a hospital has the duty of supervising the competence of the doctors on its staff. *Tucson Medical Center, Inc. v. Misevch,* 113 Ariz. 34, 545 P.2d 958 (1976). In *Misevch,* we pointed out that if the medical staff is negligent in supervising its members, the hospital itself would be held negligent.

The evidence presented at trial shows that Dr. Fridena held various positions in relationship to the hospital. He was the chief surgeon, the chairman of the board of trustees, the medical director, and the controlling stockholder as well as being the operating surgeon. In each of these roles, with the exception of his role as controlling stockholder and as operating surgeon, Dr. Fridena was an agent of the hospital.

For a hospital to be charged with negligence for the failure to supervise the quality of care or competence of its staff, it is necessary to show that the hospital had actual or constructive knowledge of the procedures carried on. *See Tucson Medical Center, Inc. v. Misevch, supra.* The appellant hospital argues that even if there was negligent conduct on the part of Dr. Fridena, they did not know about it. We disagree with the hospital, they in essence had the requisite notice.

There is a well established rule in the law of agency that a corporation is bound by the knowledge acquired by, or notice given to, its agents or officers which is within the scope of their authority and which is in reference to a matter to which their authority extends. This rule is based on a conclusive presumption that the agent will communicate to the corporation whatever knowledge or notice he receives in relation to his agency which is necessary for the protection of the interests of the corporation. *See* 19 Am.Jur.2d *Corporations* § 1263, at 669 (1965).

Evidence presented at trial indicated that in his various agency positions, Dr. Fridena had the responsibility of enforcing medical policy at the hospital and that he was the "ultimate person in control" of care. (T.R. 348–49, 372). Dr. Fridena's knowledge of the operation was imputable to the hospital because in his duties as chief surgeon, medical director and chairman of the board of trustees his knowledge was the knowledge of the hospital.

The appellants contend that no allegation concerning the hospital's negligent supervision of Dr. Fridena was made in the pleadings and that therefore, having failed to assert such a theory, it was thereby waived. In the amended complaint, however, the plaintiffs did plead that the operation was performed at the hospital with its knowledge, aid, and assistance, and that the negligence of the defendants was the proximate cause of the patient's injuries. We

find that such general allegations of negligence, along with the evidence produced at the trial of this case, are sufficient to support the hospital's liability based on the theory of negligent supervision.

■ A directed verdict may only be given where there is no evidence upon which a reasonable man would be justified in returning a verdict for the other party. *Adroit Supply Co. v. Electrical Mutual Liability Ins. Co.*, 112 Ariz. 385, 542 P.2d 810 (1975). Although the hospital offered evidence and argument in support of its position that Dr. Fridena was an independent contractor while operating on the plaintiff, the undisputed evidence of his other roles at the hospital justify the trial court's ruling that if he was negligent, then the hospital was negligent.

Next, appellants argue that the trial court committed reversible error in allowing the appellees' expert witness to testify concerning a deviation in the standard of care by Dr. Fridena in his treatment of Sharon Evans.

The witness, Dr. Warren Colton, Jr., testified that he was a medical doctor (M.D.) and an orthopedic surgeon. Dr. Fridena was a doctor of osteopathy (D.O.) and an orthopedic surgeon. Appellants objected to Dr. Colton's testimony on the standard of care applicable to the case because he had received no osteopathic training and he did not know the osteopathic surgeon's standards of training methods. Dr. Colton did, however, testify that he was familiar with the standard of care of practice in the community with respect to orthopedic surgery and that to a reasonable medical probability, the decision and recommendation to do the type of surgical procedure involved fell below the standard of care.

■ In essence the issue is whether the court erred in allowing one orthopedic surgeon to testify as to the standard of care applicable to another orthopedic surgeon, where one was trained as a medical physician and the other as an osteopathic physician.

Historically, it has been held that a member of one "school" of medicine is not competent to testify against a member of another school. *See* annot., 85 A.L.R.2d 1022 (1962). This rule has been eroded in a number of ways, and it has been held that where standards of different schools are or should be the same with respect to a particular condition, experts from such schools should be fungible in terms of their competency to testify regarding those specific standards. *See Musachia v. Terry*, 140 So.2d 605 (Fla.App.1962). Here, there has not been shown to exist any material differences between the two schools that would make any difference in the surgical procedure to remedy a disparity in leg lengths. Under the circumstances shown by the evidence there was no error in allowing Dr. Colton to testify as an expert witness on the standard of care for orthopedic surgery to remedy the condition of Mrs. Evans.

The third issue on appeal is whether the trial court erred in ruling that the defendants could not question the plaintiffs about a prior complaint, filed in 1968. The original complaint was dismissed and then refiled in August of 1970. An amended complaint was filed in January of 1971.

■ Abandoned or superseded pleadings may be used in examining a witness if statements in the pleading are those of the party or have been approved by him. *Buehman v. Smelker*, 50 Ariz. 18, 68 P.2d 946 (1937). In the instant case, the defendants sought to use the superseded pleadings to test the truth and veracity of the plaintiffs by revealing that the prior complaint contained allegations that Dr. Fridena had fully explained all aspects of the surgery to the plaintiff. The amended complaint was contrary to the original in that the plaintiffs alleged that they had not been adequately informed.

■ The truthfulness and veracity of a witness is always material, and relevant evidence should be excluded only when its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. *See* Rule 403, Arizona Rules of Evidence, 17A

A.R.S. We find that the inconsistent allegations contained in the superseded complaint were both material and relevant and should have been admitted.

■ The record does indicate, however, that the exclusion of this evidence was only harmless error. Examination of the record reveals that on cross examination, one of the plaintiffs, Josephine Fenn, mother of Sharon Evans, testified that both she and her daughter were informed by Dr. Fridena as to the nature of the surgery. (T.R. 174–175). Appellants relate that in Sharon Evans' deposition, she testified that the surgery had not been explained to her. Appellants were not precluded from using the depositions to impeach her testimony at trial on that issue, appellants were only precluded from mentioning the prior complaint. The defendants were able to show the inconsistency by other evidence, so the excluded evidence was cumulative at most.

At trial, appellants objected to any testimony by the appellees concerning conversations they had had with Dr. Fridena. On appeal, the appellants argue that the trial court erred in allowing such testimony.

■ Appellants' objections to the testimony were based on the Arizona Dead Man's Statute, A.R.S. § 12–2251, which provides:

"§ 12–2251. Limitations on testimony in actions by or against executors, administrators or guardians

In an action by or against executors, administrators or guardians in which judgment may be given for or against them as such, neither party shall be allowed to testify against the other as to any transaction with or statement by the testator, intestate or ward unless called to testify thereto by the opposite party, or required to testify thereto by the court. The provisions of this section shall extend to and include all actions by or against the heirs, devisees, legatees or legal representatives of a decedent arising out of any transaction with the decedent."

The purpose of this statute is not to preclude all testimony regarding transactions or communications with a decedent; rather, the intention is to limit inaccurate distortion of transactions or communications with the decedent. *See Carrillo v. Taylor*, 81 Ariz. 14, 299 P.2d 188 (1956).

■ The application of the statute is left to the sound discretion of the trial court. *Goff v. Guyton*, 86 Ariz. 349, 346 P.2d 286 (1959); *Murillo v. Hernandez*, 79 Ariz. 1, 281 P.2d 786 (1955); *Stewart v. Schnepf*, 62 Ariz. 440, 158 P.2d 529 (1945); *Cachenos v. Baumann*, 25 Ariz.App. 502, 544 P.2d 1103 (1976). An appellate court will not interfere with that discretion unless it appears that there has been a clear abuse. *Goff v. Guyton, supra.*

■ Since the issue of malpractice was predicated upon whether the surgical procedure was in conformance with good medical practice, which would include informing the patient about the contemplated medical procedure, we fail to see any abuse of discretion by the trial court in permitting the testimony objected to above.

The appellants next argue that the trial court erred in refusing to give the defendant's requested instructions No.'s 2, 5, 6, 7, 8, 9, and 11. Requested instructions No.'s 5, 6, 7, 8, and 9 concerned the status of Dr. Fridena and the hospital. Since we have approved the ruling of the trial court in directing a verdict on this issue, the refusal to give the requested instructions was not error.

Defendant's requested instructions No.'s 2 and 11 contained language regarding a physician's use of an alternative method of treatment. On this issue the court instructed:

"If there is only one approved method of diagnosing or treating a particular condition or ailment, a physician is required to follow that method. If there are two or more approved methods of diagnosing or treating a particular condition or ailment, a physician is required to select and follow one of the approved methods.

The mere fact that the plaintiff may not have attained .the desired results from defendant's treatment and care is not by itself to be taken by you as evidence of negligence on the part of the defendant.

It is possible for a physician to err in judgment, or to be unsuccessful in his treatment, or to disagree with others of his profession, without being negligent."

In essence, the appellants contend that the language in the given instructions could lead a jury to conclude that one physician's opinion, standing alone, was enough to establish malpractice even though other medical practitioners regarded the procedures as within the standard of care.

The issue before the jury was whether the appellant provided medical care and treatment consistent with good practice as required by the applicable standard of care. That issue was adequately covered by the instructions given. It is not necessary for the trial court to instruct on every refinement suggested by counsel. *Taylor v. DiRico*, 124 Ariz. 513, 606 P.2d 3 (1980); *Harvey v. Kellin*, 115 Ariz. 496, 566 P.2d 297 (1977).

Finally, appellants claim that the verdict was excessive and that it was given as a result of passion and prejudice such that the trial court committed reversible error in failing to vacate the verdict or to grant a remittitur. The amount of the verdict is $300,000.00.

If the verdict is supported by adequate evidence it will not be disturbed, and great discretion is given to the trial judge to determine whether the evidence required an adjustment of the verdict. *Creamer v. Troiano*, 108 Ariz. 573, 503 P.2d 794 (1972). On appeal, the discretion of the trial judge will not be disturbed absent a clear showing of abuse.

In the instant case, there was evidence presented on the nature, extent and effect of the injury on the plaintiff which was sufficient to support the jury's assessment of damages in the amount of $300,-000.00. Therefore, we find that the trial judge did not abuse his discretion in failing to vacate the verdict or grant a remittitur.

Having reviewed the record and finding no reversible error, the judgment of the superior court is affirmed.

STRUCKMEYER, C. J., and HAYS, CAMERON and GORDON, JJ., concur.