Delbert Junior WILLIAMS, Appellant,

v.

ST. CLAIRE MEDICAL CENTER, Appellee.

Court of Appeals of Kentucky.

Oct. 7, 1983.

Grover A. Carrington, White, Peck & Carrington, Mount Sterling, and William R. Garmer, Perlman & Garmer, P.S.C., Lexington, for appellant.

Ralph F. Kessinger, Robert E. Reeves, Stites & Harbison, Lexington, for appellee.

Before MILLER, PAXTON and WILHOIT, JJ.

MILLER, Judge.

This is a medical negligence case in which the plaintiff appeals from a summary judgment entered by the Rowan Circuit Court in favor of the defendant hospital, St. Claire Medical Center. The entry of summary judgment under CR 56.03 which is only proper in absence of a genuine issue of a material fact [*Isaacs v. Cox,* Ky., 431 S.W.2d 494 (1968), and *Conley v. Hall,* Ky.,

395 S.W.2d 575 (1965) ] sets up two ultimate questions for our consideration: (1) Does a hospital owe a duty to private patients of staff physicians to enforce its published rules and regulations pertaining to patient care, the breach of which may result in independent liability of the hospital, and (2) may vicarious liability be imposed upon a hospital for the negligence of independent staff personnel in the care and treatment of patients, under the doctrine of apparent authority or ostensible agency. Upon careful evaluation of available precedent and with realistic understanding of present day society we answer both questions in the affirmative.

## FACTS AND PROCEDURAL HISTORY

Appellant, Delbert Junior Williams, suffered permanent brain damage on October 30, 1980, while being administered anesthetics prior to undergoing an arthroscopy at St. Claire Medical Center (hospital), the appellee herein. Appellant was having problems with his left knee and was admitted to the hospital on October 29, 1980, as a private patient of Dr. Thomas Fossett, an orthopedic surgeon with staff privileges. At that time appellee had no anesthesiologist on staff and thus all anesthetics were administered by nurse anesthetists. Dr. Fossett was chairman of the Department of Surgery at the hospital and also acting chairman of the Department of Anesthesiology, although he had no medical training in general anesthesia.

The nurse anesthetists who worked at St. Claire Medical Center were not employees of the hospital, but rather were employed by Cave Run Clinic, a professional service corporation in the area comprised of medical doctors. Ed Johnson, the nurse who anesthetized appellant was not a certified registered nurse anesthetist at the time of the incident causing appellant's injury. He had only graduated from nurse anesthetist school one month prior to treating appellant and had not yet taken the examinations necessary to obtain certification. He was employed by Cave Run Clinic on July 26, 1980, and was simultaneously granted tem-

porary staff privileges at the hospital. His staff privileges were, however, limited to those instances when he was under the direct supervision of Jerri Reis, certified registered nurse anesthetist, (CRNA), pending completion of nurse anesthetist training and eligibility for board certification.

The hospital's published anesthesiology policies in force in October, 1980, pertinent to this appeal provided as follows:

. . . . .

III. The Certified Registered Nurse Anesthetists are under the supervision of the Chairman of the Anesthesia Service.

IV. When giving anesthesia, the CRNA will have been in communication with the anesthesiologist and surgeon or obstetrician except in emergent procedures when the anesthesiologist is not available for consultation.

V. Anesthetics will be administered only by a CRNA or qualified physician.

. . . .

Appellant was first introduced to nurse Johnson in his hospital room the day before the scheduled surgery on October 29, 1980, at which time Johnson solicited information from appellant for the purpose of determining an anesthetic plan. Although a spinal anesthetic would normally be administered for an arthroscopy, Johnson determined that a general anesthesia should be used in deference to the fact that appellant had previously had a myelogram. Johnson testified that he did not recall having any conferences with Dr. Fossett between the time he interviewed appellant on the 29th and when he anesthetized him the next day.

Although Johnson was to perform his nursing services only under the direct supervision of Jerri Reis, CRNA, neither Ms. Reis, nor any other certified registered nurse anesthetist, nor Dr. Fossett, was in the operating room on the morning of October 30, 1980, when Johnson anesthetized appellant. Thus the type of anesthetic and the amount given were entirely left to the discretion of Johnson who administered same to appellant with no direct supervision.

About twenty minutes after Johnson began administering the anesthetic he noticed that appellant was getting "dusky" from the neck up. He immediately asked Dr. Fossett to step into the operating room. Another doctor was called and the two doctors administered closed chest massage to resuscitate appellant. Appellant was then transferred to the University of Kentucky Medical Center where he remained in a coma for 10 to 12 days.

Appellant filed his complaint alleging negligence in Rowan Circuit Court on August 31, 1981, naming as defendants, Ed Johnson, St. Claire Medical Center, Dr. Fossett and Cave Run Clinic. Appellant's claims against Ed Johnson, Dr. Fossett and Cave Run Clinic were settled. St. Claire Medical Center was granted summary judgment which precipitated this appeal.

## INDEPENDENT LIABILITY OF HOSPITAL

Appellant argues that appellee breached its duty owed to him by failing to enforce its own rules and regulations established for patient care. Specifically, he alleges the hospital was negligent, through its administrative staff, by allowing Johnson to anesthetize him while not under the direct supervision of a certified nurse anesthetist or a physician contrary to the written policies of the hospital and to the conditions contained in hospital's approval of Johnson's application for staff privileges.

Appellee argues that it had no duty to supervise Johnson as he was not an employee of the hospital, but was rather an independent contractor. It further alleges that as appellant was a private patient of Dr. Fossett, as opposed to being a patient of the hospital, that it had no duty to enforce its policies on his behalf.

There is abundant evidence in the record which creates a jury issue of whether or not the hospital breached its duty to appellant, and if so, whether or not the breach thereof was a substantial factor in bringing about appellant's injuries. The various depositions show that the appellee had established written procedures for the administration

of anesthetics, that it had limited Johnson's ability to administer anesthetics to those times when he was under the direct supervision of a CRNA or M.D. Neither a CRNA or M.D. was in the operating room when Johnson anesthetized appellant, that Fossett, acting chairman of the anesthesiology department of the hospital, was aware both of the fact that restrictions had been imposed on Johnson and that the morning of October 30, 1980, Johnson was unsupervised. There is ample basis for believing appellant suffered permanent brain damage immediately following the anesthesia procedure. The record further contains the deposition of appellant's expert witness, Dr. I.V. Malhotra, who testified that the hospital was negligent, in his opinion, for not having a trained anesthesiologist on staff, for allowing the attending surgeon to be in charge of anesthesia and for not insuring that a physician was present in the operating room when Johnson anesthetized appellant. Thus in order for the summary judgment to be affirmed, it must be determined, as a matter of law, that the hospital owed no duty to appellant to enforce its anesthesiology policies, or to establish procedures to insure that those with limited staff privileges did not exceed the authority to treat patients as restricted by the hospital.

Appellee insists that it cannot be held liable for the torts committed by independent contractors, be they doctors or nurses, who perform services in their medical facility. It relies on *Carter v. Harlan Hospital,* 278 Ky. 84, 128 S.W.2d 174, 176 (1939), wherein a patient sought damages from the hospital, as well as her surgeon, for injuries caused by a pair of forceps left in her abdomen following surgery. The trial court directed a verdict in favor of the hospital which was affirmed by our appellate court as follows:

There was not the slightest evidence in the record justifying a submission of the case to the jury as to the Harlan Hospital. No contract was proven with the hospital to perform a surgical operation on Appellant, nor is there any evidence that any agent of the hospital did so.

While this case may inferentially relieve a hospital of any responsibility for the tortious acts of non-employees of the hospital, it has no bearing on the separate issue of whether the hospital itself was negligent in failing to enforce its anesthesiology policies.

Of the cases cited by appellee, the one most relevant to the issue of the hospital's duty to enforce its policies or procedures is *Schenck v. Government of Guam,* 609 F.2d 387, 391 (9th Cir.1979). Therein the appellant was the private patient of a physician with staff privileges at the appellee's facility who underwent a therapeutic abortion. The fetus, however, was not removed which later caused appellant to need a hysterectomy. Appellant alleged that her injuries were caused by the hospital's negligent failure to review and supervise the surgical procedures of the physicians who practiced in the hospital. In affirming the district court's conclusion that the hospital had no duty to supervise the medical doctors on its staff, the 9th Circuit held as follows:

There is substantial evidence in the record that the hospital did not follow its own by-laws and the guidelines of the Hospital Accreditation Manual because it did not establish and utilize an adequate audit committee and tissue review committee so as to review medical work done by private physicians within the hospital. There is also evidence it did not utilize accepted procedures in its pathology department and it did not have a policy in regard to therapeutic abortion. This evidence gives factual support to the finding of negligence by the trial court. However, any finding of negligence by the hospital must be predicated upon the existence of a legal duty of the hospital to the patient to review or supervise the treatment given in the hospital by a private physician. The district court acting in its capacity as the local appellate court for the Territory of Guam concluded as a matter of law that no such duty existed in that jurisdiction.

We cannot say that the district court's legal conclusion is without a rational basis or is inescapably wrong.

The legal duty in the case at bar, which appellant claims the hospital owed him and which he claims is breached, is not the duty to supervise or review the medical treatment given him, but the duty to enforce its policies which, if followed, would have precluded his receiving any anesthetic treatment in the first place solely from an unqualified, uncertified, inexperienced nurse with temporary, limited staff privileges.

In a recent Kentucky case, *Rogers v. Kasdan,* Ky., 612 S.W.2d 133, 136 (1981), our highest court ruled that there was more than sufficient evidence in that case to create a jury question on the issue of the hospital's liability for the death of Mrs. Rogers due to the failure of the hospital to maintain appropriate procedures to insure that "adopted rules of hospital procedure" were followed. That court held therein as follows:

> Whether the hospital hired knowledgeable nurses, or had proper supervision for staff physicians, or accurate record keeping, and so forth, were all evidently questions for the jury to consider.

Appellee suggests in its brief that the court held that liability of the hospital in the *Rogers* case, *supra,* flowed from the negligence of Dr. Kasdan under the theory of respondeat superior. Such an interpretation is erroneous as the court therein discusses, separately and apart, the liability of the hospital, for failure to enforce hospital rules, from that of Dr. Kasdan.

The appellee further contends that *Rogers* has no applicability to the case at bar because Mrs. Rogers entered the hospital through the emergency room, and not as a private patient of a doctor on staff as appellant herein. As *Rogers* clearly recognizes that a hospital has a legal duty to enforce rules and regulations established for proper patient care, appellee asks this court to determine that a hospital owes a lesser duty (or none at all) to those patients who knowingly and willingly place themselves in the care of the hospital, than it owes to those who happen into the hospital, by chance, as Mrs. Rogers, following an emergency occurrence.

In *Browning v. Norton-Children's Hospital,* Ky., 504 S.W.2d 713, 714 (1974), the court reasoned as follows:

> ... when one consents to and authorizes an operation while a patient in a hospital (absent any specific reservation, demand, or objection to some normal procedure), he then and thereby, in effect, accepts all the rules, regulations, and the modus operandi of that hospital.

█ A reasonable inference therefrom is that, while the patient must accept all the rules and regulations of the hospital, he should be able to expect that the hospital will follow its rules established for his care. Whether a patient enters a hospital through the emergency room or is admitted as a private patient by a staff physician, the patient is entering the hospital for only one reason recognized by this court's predecessor many years ago in *University of Louisville v. Hammock,* 127 Ky. 564, 106 S.W. 219, 220 (1907), wherein the court said:

> Indeed, the sick leave their homes and enter hospitals because of the superior treatment there promised them.

There is no rational reason or public policy why a hospital's duty to properly administer its policies should be any less to one patient than another depending upon how the patient initially arrived at the hospital.

Both parties hereto have cited many cases from other jurisdictions in support of their respective positions. A detailed examination of those cases will not be dealt with herein as we believe *Rogers v. Kasdan, supra,* adequately disposes of this issue. However as appellee has incorrectly stated the result in a foreign case cited by appellant, a discussion of this case seems appropriate. Appellee states that *Johnson v. St. Bernard Hospital,* 79 Ill.App.3d 709, 35 Ill. Dec. 364, 399 N.E.2d 198, 205 (1979), "holds opposite to Appellant's position" and that the summary judgment granted in favor of the hospital was upheld. Therein the hospital's by-laws required that the administration be notified within 48 hours if a request for consultation in a non-emergency situation went unanswered. The plaintiff's attending physician so notified the adminis-

tration that another staff doctor had refused to examine the plaintiff. The hospital then made no effort to require the refusing doctor to examine the patient or to assist the attending physician in obtaining another orthopedic specialist. That court, in reversing the summary judgment in favor of the hospital, held as follows:

> The bylaws perform the same function as evidence of custom and practice. Although the bylaws did not conclusively determine the standard of care, they were evidence of the responsibility which the hospital assumed for the care of the patient ... It requires not medical expertise, but administrative expertise, to enforce rules and regulations which were adopted by the hospital to insure a smoothly run hospital routine and adequate patient care and under which the physicians here agreed to operate.

. . . .

■ We believe the record reflects facts which, when taken in light of prevailing case law, create a genuine issue of the hospital's breach of duty to appellant by failing to enforce its own rules and regulations regarding the administering of anesthesia. Therefore, summary judgment on this issue was erroneous.

## VICARIOUS LIABILITY OF HOSPITAL BASED ON APPARENT AUTHORITY OR OSTENSIBLE AGENCY

Appellant additionally argues that summary judgment in this matter was improper as the hospital is vicariously liable for the tortious acts of Johnson under the theory of ostensible agency, frequently referred to by the courts, as the doctrine of apparent authority. Appellee argues that Kentucky has never recognized the doctrine of ostensible agency. In the absence of their own negligence in selecting staff members, hospitals have been absolved of liability for the negligent acts of independent staff personnel such as private practitioners including nurses, physicians, and technicians privileged to practice their professions or expertise within the hospital. Such persons have not been considered employees but independent contractors thereby insulating the hospitals from vicarious liability for their negligent acts or omissions under traditional agency concepts. *See Stacy v. Williams,* 253 Ky. 353, 69 S.W.2d 697 (1934) (a physician); 40 Am.Jur.2d *Hospitals and Asylums* § 27–30 (1968); Annot., 14 A.L.R.3rd 873 (1967).

Appellant maintains that he had no reason to believe that Johnson was anything other than an employee of the hospital. Unquestionably Kentucky courts have recognized, and have applied, the doctrine of apparent authority. A recent tort case of *Estell v. Barrickman,* Ky.App., 571 S.W.2d 650, 652 (1978), contains the following definition of this concept:

> Apparent authority is not actual authority, but rather "is that which, by reason of prevailing usage or other circumstance, the agent is in effect held out by the principal as possessing. It is a matter of appearances, fairly chargeable to the principal and by which persons dealt with are deceived, and on which they rely."

In *Union Central Life Ins. Co. v. Glasscock,* 270 Ky. 750, 110 S.W.2d 681, 685 (1937), the court quoted approvingly from the *Restatement of Law of Agency* § 49, Comment "b" as follows:

> In comment b to section 49, it is said: "Acts are interpreted in the light of ordinary human experience. If the principal puts one into, or knowingly permits him to occupy, a position in which, according to the ordinary experience and habits of mankind, it is usual for the occupant to have authority of a particular kind, anyone having occasion to deal with one in the position is justified in inferring that the person in question possesses such authority, unless the contrary is then made known."

The *Restatement (Second) of Agency* § 267 (1958) provides as follows:

> One who represents that another is his servant or other agent and thereby causes a third person justifiably to rely upon the care or skill of such apparent agent is subject to liability to third person for

harm caused by the lack of care or skill of the one appearing to be a servant or other agent as if he were such.

■ In applying the above legal principles to the situation here presented, it logically follows that the appellant justifiably believed Johnson to be a hospital employee. By taking no action to give appellant notice otherwise, the hospital "held-out" Johnson as an employee, thus creating an apparent agency. Therefore the hospital should be held liable for the negligence, if any, of nurse Johnson.

We find no Kentucky cases applying the doctrine of apparent authority to hospitals and doctors or nurses although other jurisdictions have considered this precise situation. In *Mehlman v. Powell,* 281 Md. 269, 378 A.2d 1121, 1124 (1977), the patient was negligently treated by a doctor, an independent contractor, in the hospital emergency room. A jury returned a verdict against the hospital. On appeal the hospital argued there was no actual master-servant relationship between the doctor and the hospital which precluded the hospital from liability. In affirming the award the appellate court reasoned as follows:

... The Hospital, however, is engaged in the business of providing health care services. One enters a hospital for no other reason. When Mr. Powell made the decision to go to Holy Cross Hospital, he obviously desired medical services and equally obviously was relying on Holy Cross Hospital to provide them. Furthermore, the Hospital and the emergency room are located in the same general structure ...

In the instant case, all appearances suggest and all ordinary expectations would be that the Hospital emergency room, physically a part of the Hospital, was in fact an integral part of the institution. It is not to be expected, and nothing put Mr. Powell on notice, that the various procedures and departments of a complex, modern hospital like Holy Cross are in fact franchised out to various independent contractors. The situation seems to us substantially similar to that in *Stanhope v. Los Angeles College of Chiropractic,* 54 Cal.App.2d 141, 128 P.2d 705 (1942), where the court, holding that an apparent agency existed between a hospital and an independent radiologist, stated (128 P.2d at 708):

"... [T]he appellant did nothing to put respondent on notice that the X-ray laboratory was not an integral part of appellant institution, and it cannot seriously be contended that respondent, when he was being carried from room to room ... should have inquired whether the individual doctors who examined him were employees ... or were independent contractors."

We thus hold that Holy Cross Hospital represented to the decedent that the staff of the Holy Cross Hospital emergency room were its employees, thereby causing the decedent to rely on the skill of the emergency room staff, and that the Hospital is consequently liable to the decedent as if the emergency room staff were its employees.

For similar results, *see also Adamski v. Tacoma General Hospital,* 20 Wash.App. 98, 579 P.2d 970 (1978), and *Howard v. Park,* 37 Mich.App. 496, 195 N.W.2d 39 (1972).

■ We believe it to be axiomatic that the general public, unless otherwise directed, in seeking medical services from public hospitals, acts in total reliance upon the hospital staff as though they are agents and servants of the hospital in a traditional sense. We believe this view is one prevailing in contemporary judicial thought. For a discussion of this premise see Levine, *Hospital's Liability for Independent Emergency Room Service,* 22 Santa Clara L.Rev. 791 (1982). Therefore, we believe the trial court was also in error in entering a summary judgment on the issue of apparent authority or ostensible agency. Although it may well be that a hospital owes no duty to admit a patient in absence of a clear emergency or an order from an attending physician, [*cf. Hill v. Ohio County,* Ky., 468 S.W.2d 306 (1970), and *Richard v. Adair Hospital Foundation Corporation,* Ky.App., 566 S.W.2d 791 (1978)], we are not here

required to approve or disapprove the wisdom of such a rule. However, it appears to us that when a hospital has received a patient, under whatever circumstance, and has undertaken treatment, that patient is owed a duty by the hospital through its employees and staff, including independent staff personnel, to exercise appropriate care to provide for the patient's well-being and to promote his cure. A breach of this duty may expose the hospital to liability in tort. Any lesser rule would be insensible to the true role of a hospital as an institution in present day society.

For the foregoing reasons the judgment of the lower court is reversed and this cause is remanded for proceedings consistent with this opinion.

PAXTON, J., concurs.

WILHOIT, J., concurs in the result and files a separate opinion.

WILHOIT, Judge, concurring in the result.

I concur in the majority opinion insofar as it holds that the trial court erred in granting summary judgment; however, I cannot agree with much of the legal analysis by which it reaches its holding.

The general duty owed by the appellee to the appellant was to exercise that degree of care and skill ordinarily expected of reasonable and prudent hospitals under similar circumstances. *See Rogers v. Kasdan*, Ky., 612 S.W.2d 133 (1981). The record before us presents a genuine issue of fact as to whether that duty was breached and as a result the appellant injured. For example,

the appellee's written policy is evidence bearing on the standard of care owed by it to a patient in administration of anesthetics. If the appellee had actual or constructive knowledge that its policy was not being adhered to, then it might well be held accountable in tort. The role of an acting chairman of the department of anesthesiology is unclear, but if it was such as to render Dr. Fossett legally the agent of the hospital, then his knowledge could be imputed to the hospital. *See United Fuel Gas Co. v. Jude*, Ky., 355 S.W.2d 664 (1962); *Fridena v. Evans*, 127 Ariz. 516, 622 P.2d 463, 12 A.L.R.4th 46 (1980); *Tucson Medical Center, Inc. v. Misevch*, 113 Ariz. 34, 545 P.2d 958 (1976).

I cannot agree with the majority's holding with respect to apparent authority. What the majority finds to be axiomatic strikes me as unsound both as a matter of fact and as a matter of law. Under the majority's analysis, a hospital, which has little control over most of the treatment decisions of an independent, nonemployee professional in the healing arts nevertheless would be held liable for all of those decisions, even where the hospital has not held out that person to be its employee. This is indeed a radical departure from established principles of malpractice liability.