## Ball v. Clark.

(Decided February 22, 1918.)

### Appeal from Harlan Circuit Court.

Money Received—Right of Cashier of Bank Who Has Advanced His Private Funds to the Bank's Customer to Meet a Certified Check, to Recover of the Payee of the Check.—Where the cashier of a bank advanced his private funds to a customer to meet his certified check and took security therefor, he could not thereafter recover of the payee of the check on the ground that as the customer failed to reimburse him, the payee of the check received his money.

CLAY & CARTER for appellant.

W. F. HALL and HALL & JONES for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

Plaintiff, A. M. Clark, brought this suit against defendant, C. E. Ball, to recover the sum of $1,000.00. The law and facts were submitted to the court without the intervention of a jury, and judgment rendered in favor of plaintiff. Defendant's motion and grounds for a new trial having been overruled, he prosecutes this appeal.

The facts are as follows: Plaintiff was cashier and E. F. Boggess was assistant cashier of the Peoples Bank of Harlan. Smith Ball and defendant, C. E. Ball, were both depositors of the bank. A few days before October 4, 1913, Smith Ball asked plaintiff if he could get $1,000 at the bank if he needed it, no mention being made of the purpose for which it was to be used. Plaintiff informed Smith Ball that he could get that amount of money and told Boggess, the assistant cashier, to let him have it, if he wanted it. At that time, W. A. Brock and Jno. A. Creech were candidates for county judge. Smith Ball was for Brock and C. E. Ball for Creech. On the morning of October 4, 1913, plaintiff was out of the bank. When he returned he was informed that Smith Ball had bet $1,000.00 that Brock would be elected, while C. E. Ball had bet $500.00 that Creech would be elected. The two Balls requested plaintiff to be their stakeholder and he consented to act in that capacity. Thereupon Smith Ball placed in his hands a check for $1,000.00 certified by the bank by Boggess as assistant cashier, while C. E. Ball placed in his hands Creech's check for $500.00 certified

in like manner. The two checks were to be held by plaintiff until after the election on November 4, 1913. If Brock was elected both checks were to be delivered to Smith Ball. If Creech was elected, both checks were to be delivered to C. E. Ball. When plaintiff looked at the books of the bank, he ascertained that Boggess had certified the $1,000.00 check when Smith Ball did not have that amount of money to his credit. Desiring to keep the records of the bank straight and believing that Smith Ball was perfectly good, plaintiff drew his own check for $1,000.00 and placed that amount to the credit of Smith Ball. Between October 4th and October 30, 1913, Smith Ball did not pay to plaintiff the $1,000.00 though he was requested several times to do so. On October 30, 1913, Smith Ball, for the purpose of securing the $1,000.00 executed to E. F. Boggess, trustee, his note for that sum secured by a mortgage. On the same day, the note and mortgage were assigned to plaintiff. At the election which occurred on November 4, 1913, Creech was the successful candidate and received a certificate of election. Thereupon Creech's check for $500.00 was credited to his account, while the $1,000.00 check of Smith Ball was credited to the account of C. E. Ball, who subsequently checked the money out of the bank. Thereafter plaintiff brought suit on the note and mortgage. Smith Ball defended on the two grounds: (1) that the $1,000.00 was obtained from plaintiff to be used as a bet on the election; (2) that Smith Ball notified plaintiff before the money was paid to C. E. Ball not to pay the bet. The trial resulted in a judgment for Smith Ball.

Plaintiff's right of action is based solely on the theory that as Smith Ball was released from the payment of the $1,000.00, the money which C. E. Ball received was plaintiff's money, and plaintiff is therefore entitled to recover it. In deciding the question we shall eliminate entirely the betting feature of the transaction and concede as true plaintiff's statement that the money was not furnished to Smith Ball for the purpose of making a bet but was furnished for the purpose of keeping the records of the bank straight. We then have a case where plaintiff believing that Smith Ball was good for the money, himself placed the money to the former's credit to meet the check which the bank had certified. When Smith Ball failed to pay to plaintiff the money thus furnished, the note and mortgage were executed to Boggess as trustee and then

assigned to plaintiff for the purpose of securing the money. These circumstances make it clear that the money was furnished on the faith of Smith Ball's credit, and the transaction can not be regarded in any other light than as a loan of that much money to Smith Ball. Whether before the payment of the money, plaintiff could have repudiated the transaction, it is unnecessary to determine. As a matter of fact, the money was furnished to Smith Ball to meet the certified check and was used for that purpose. Under these circumstances plaintiff parted with his title to the money and when the money was transferred to the account of C. E. Ball, he received the money of Smith Ball and not the money of plaintiff. The mere fact therefore that Smith Ball subsequently refused to repay plaintiff and defeated him in the suit brought to recover the money, did not have the effect of reinvesting plaintiff with a title to the money and thereby making C. E. Ball liable for its payment. If such were the law, then everyone lending money to another for the purpose of paying a particular debt could recover of the creditor to whom the debt was paid in every case where the borrower refused to repay the loan. It follows that there should have been a judgment in favor of the defendant.

Judgment reversed and cause remanded with directions to dismiss the petition.