# Union Central Life Ins. Co. v. Glasscock.

(Decided Nov. 26, 1937.)

WILLIAM E. BERRY and BRUCE & BULLITT for appellant.

PAUL M. BASHAM for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming in part and reversing in part.

The Union Central Life Insurance Company has appealed from a judgment against it for $1,900, with interest from April 24, 1930, in favor of Luther S. Glasscock.

As stated in brief of appellant, this appeal involves but one branch of the voluminous proceedings had in an action in the Breckinridge circuit court for the settlement of the estate of H. M. Beard, deceased, and others, and presents but the one question which is whether or not the appellee is entitled to recover of appellant the $1,900 sued for and recovered in the court below by the appellee as the purchase price paid by him for 19.68 acres of land, under the mistaken belief it was clear of encumbrance when bought of A. T. Beard under contract that same should be free from encumbrances, and which purchase price, so paid Beard, was by him paid over to the appellant, a third party, upon a mortgage debt he then owed it.

The facts shown by the record are these: H. M. Beard and A. T. Beard had owned as partners a large tract of land in Breckinridge county, on which they had executed two separate mortgages, one to Green Bros., a partnership, and the other (a later one), executed in September, 1926, to the appellant insurance company to secure the payment of a mortgage loan of $8,500 then made them.

It is admitted and stipulated that the Green Bros.' mortgage was prior and superior to that of appellant, and in the later foreclosure proceedings had in this suit brought to settle the Beard brothers' estate, the appellant insurance company's junior mortgage was cut off and rendered worthless, it seems, by the adjudged enforcement of Green Bros.' mortgage against this large farm, held in lien by both mortgagees, which embraces within its boundary the 19.68 acres here involved.

In respect to the negotiations and attending circumstances under which this land was sold Glasscock, it appears that Glasscock's father, acting for him, had in 1929 approached A. T. Beard with a view to buying this 19.68 acres of the Beard brothers' farm; that A. T.

Beard desired to sell it and after explaining the encumbered condition of the title, as being then under mortgage to the appellant; stated he would see if he could have it straightened out so that the land might be conveyed him free of encumbrances, in accordance with the terms of Glasscock's offer.

Looking to this end, he at once took up the matter of its sale with the appellant's collecting or field agent, Rawls, advising him of Glasscock's offer and his desire to accept same and pay the purchase price of $1,900 when received over to the insurance company upon his mortgage debt owing it, if the tract could be freed of encumbrance by its release of the mortgage lien it held upon this 19.68 acres of the mortgaged farm which Glasscock wished to buy.

The appellant was found willing to cooperate in carrying out this plan upon the terms proposed.

Further, the record discloses that at this stage of the negotiations, Beard and Glasscock each assumed that the appellant's mortgage was the only lien on the 19.68-acre tract, and Beard was to obtain its release in order to comply with his contract to convey it to Glasscock free of all encumbrances.

However, in view of the fact that H. M. Beard, A. T. Beard's brother and partner, had died some time prior to January 20, 1930, and that his undivided one-half interest in their farm (mortgaged to appellant) had vested in his widow and infant son, the appellant's agent, Rawls, suggested that, in view of the resulting condition of his title, Beard should institute certain preliminary proceedings, looking to clearing up the title by obtaining a judicial sale of the land, at which he could buy it in, subject to the company's lien, in order to vest title thereto in himself and, further, that he should furnish appellant with a new abstract showing the present condition of the farm and title, with respect to liens outstanding against it, and have an appraisement made as to the value of the 19.68-acre tract which Glasscock desired to purchase; that, when these things were done, he thought the appellant mortgagee would co-operate with Beard in carrying through the proposed sale and conveyance of this land to Glasscock with clear title thereto, to be effected by the company's then releasing its lien thereon, conditioned, as agreed, upon Beard's paying over to it upon his mortgage debt the

purchase price received by him from Glasscock for the land.

The suggested legal action was brought by Beard, wherein the appellant company was joined as a coplaintiff in the petition (evidently because of its being a lien creditor), and in which it was alleged that the plaintiff Beards were the owners of said land, and the only ones having any interest therein, except the appellant insurance company, which held a lien of mortgage thereon.

Upon submission of this ex parte cause for judgment, it was adjudged, as alleged in the petition, that the Beards, brothers and partners, were the owners of the land, subject to the superior mortgage lien of the appellant insurance company, and an order was entered decreeing a sale of the land, subject to the lien of the appellant. At the sale A. T. Beard became the purchaser of the land. This sale was duly confirmed, vesting title in A. T. Beard, who assumed the mortgage loan of $8,500 held by the appellant insurance company against it.

Following this, it appears that A. T. Beard and wife entered into a written contract with Glasscock for the sale of the 19.86-acre tract of this land for a cash consideration of $1,900, in consideration of which Beard agreed to convey the tract to Glasscock "free of all encumbrances" and make him deed therefor as soon as he could receive a deed for the land from the master commissioner.

Thereupon Glasscock paid Beard the agreed purchase price, which was deposited by him in the bank.

Following this (on May 19, 1930) Beard conveyed the 19.68-acre tract by general warranty deed to Glasscock, the parties apparently assuming that the appellant company's mortgage was the only lien outstanding against the 19.68-acre tract conveyed, and which it was understood and agreed between them that there would be released by the insurance company its mortgage lien upon Beard's payment to it of the purchase price received for the 19.68-acre tract.

Shortly following Glasscock's payment to Beard of the $1,900 for the land, Beard paid the amount received over to the appellant company upon his debt owing it, which was credited with that amount, and thereupon the insurance company executed its deed of release on the 19.68-acre tract sold Glasscock.

Some three and a half years after this matter was thus consummated, it was discovered that Glasscock had not been given an unencumbered title to the 19.68-acre tract purchased by him, by reason of its developing that Green Bros. held a prior and superior lien against it, which they set up in this action, which had been filed in the Breckinridge circuit court for a settlement of the estate and partnership affairs of H. M. and T. B. Beard, deceased, whereupon the rights of the appellee, Glasscock, and the appellant insurance company became involved. Green Bros. in their petition alleged there was an indebtedness owing by the Beard brothers to them of several thousand dollars, which was secured by a prior and paramount mortgage lien executed by them on their lands here involved and other real estate, which they asked to be so adjudged and enforced.

It appears that this outstanding and prior lien of Green Bros., duly of record, was overlooked by the abstractor and not reported to the appellant in either of the two prior abstracts made of the Beard brothers' title to this land, with the result that all the parties, Beard, the appellant insurance company, and the appellee, Glasscock, then learned for the first time, upon Green Bros. setting up in this action their prior mortgage lien, that the appellant insurance company did not hold the first and only lien against the land in question as the parties had supposed in their earlier dealings had in the sale of this 19.68-acre tract to Glasscock.

At this juncture, the appellee, Glasscock, filed his intervening petition in the action, asking that the deed executed him by Beard be canceled and that both Beard and the insurance company be adjudged to restore him the money paid Beard for the 19.68-acre tract sold him, upon the ground that there had been a failure of consideration for his payment made under the influence of a mistake to Beard, who had paid it over to his creditor, the appellant, in that these parties, who had received his money, had failed to convey him a title to the land free of all encumbrances, as contracted for.

Upon submission of this cause, it was adjudged that Green Bros. had a superior and paramount lien upon this land; that Glasscock recover of the Union Central Life Insurance Company and A. T. Beard the sum of $1,900, the purchase price of the land paid by him to Beard, and that the said life insurance company, who had received the $1,900 from Beard (to whom the

said Glasscock had paid same), should refund and pay back the said sum to Glasscock with interest thereon. Further it was adjudged that the parties be put in status quo by directing a cancellation of the deed made by Beard to Glasscock of the land involved, revesting Beard with title and that the release by the appellant insurance company of its mortgage lien against the land conveyed Glasscock should be set aside and the appellant company restored to its position and rights had under its mortgage lien before its release.

The appellant insurance company, complaining of this judgment and challenging its correctness, has appealed, insisting that the court erred in requiring it to pay back to Glasscock the $1,900 he had paid Beard, admittedly by mistake, for the land in question, because of its having been paid over by Beard to it, regardless of its having been received by it as a third party from him, as its debtor, in good faith and in due course of business as a credit upon the mortgage debt owing it by him; that the amount thus paid it came into its hands without its having done or said to Glasscock anything, either by way of misrepresenting the title Beard was making him to the tract or with any knowledge that the title conveyed him would, after the release of its mortgage, remain encumbered by reason of the prior and superior mortgage lien of Green Bros.

The appellee, on the other hand, contends that the appellant is not entitled to retain this money received from Beard, where the same had been paid to Beard by Glasscock through their mutual mistake, alleged known to appellant when it received his payment made from Beard or if paid to it where induced to do so by the fraud and mistake of Beard, to which he contends appellant was a party and had knowledge, and upon such grounds he insists that the court properly adjudged that the appellant should make restitution to Glasscock of the money it received from Beard and that the parties be restored to their former positions or status quo ante.

While finding ourselves unable to agree with this provision of the judgment, so holding, we would yet not be understood as in anywise questioning or limiting the scope of the equitable rule (here we conceive, mistakenly invoked by appellee) requiring restitution of money or property received by a party from another when acting under mistake, which has resulted in the unjust enrichment of the one at the expense of the

other, making it against good conscience to retain that received, but an entirely different case we feel is here presented.

We thoroughly approve the lower court's judgment in its application of this rule in so far as it applies it in decreeing that Beard, the party to whom the money was paid by mistake, should make restitution to Glasscock of the money so paid him for the land, where it is clear there has resulted an entire failure of consideration to him therefor, but we are constrained to conclude that the judgment was improper in so extending this rule as to adjudge that restitution of the money, mistakenly paid to Beard, should be also made to Glasscock by the appellant third party, to whom Beard, its debtor, had paid the amount received from Glasscock, which it, in good faith, had received and applied upon the debt he was then owing it.

This money having been so received, we conclude, by the appellant without any showing made of bad faith, misrepresentation, or of its having induced Glasscock by either fraud or misrepresentation (deceiving or misleading him) to pay over his money to Beard for a worthless title, which appellant would from him receive, it results that appellee's claim should not be treated as coming within the principal or reason of the equitable rule requiring restitution of the amount received where its retention is against good conscience.

Clearly, the mere fact of Beard's bringing the suit in the manner here followed, of naming the appellant as co-plaintiff therein, and in alleging that his title to the land sold was encumbered only by a mortgage lien in favor of appellant, could not be held to bind the appellant as for a misrepresentation made therein unless it was further made to appear that Beard's bringing of the suit in such manner was either authorized by the appellant itself or by an agent having either actual or apparent authority to act for it in directing the bringing of the suit.

However, it does not appear that the bringing of this suit in such manner, or at all, was in either way authorized by appellant.

The evidence here shows that Rawls was only a collecting or special field agent, whose apparent authority was measured by the limited scope of doing the collecting work for which especially employed by the appellant.

Such being the case, it would follow that even had this special agent, Rawls, himself authorized the suit's being brought in such manner, the same would not render appellant liable for the alleged misrepresentation arising therefrom as being its act, tending to mislead Glasscock, in that Rawls, being only a collecting or special agent of limited authority, was clearly, as such, without any authority (implied or apparent) to employ attorneys to bring suits for and in the company's name.

The general rule as to the scope of authority of an agent is well stated in Restatement of the Law of Agency, sec. 49, comment a, as follows: "Authority exists in accordance with the manifestations of the principal to the agent; apparent authority may be created in any of the ways by which authority is created * * *"; i. e., "by written or spoken words or any other conduct of the principal, which reasonably interpreted causes a third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him." Section 27, p. 76.

In comment b to section 49, it is said:

"Acts are interpreted in the light of ordinary human experience. If the principal puts one into, or knowingly permits him to occupy, a position in which, according to the ordinary experience and habits of mankind, it is usual for the occupant to have authority of a particular kind, anyone having occasion to deal with one in that position is justified in inferring that the person in question possesses such authority, unless the contrary is then made known."

See, also, 2 C. J. 661; Hurst Home Insurance Company v. Ledford, 207 Ky. 212, 268 S. W. 1090; Russell & Company v. Newdigate, 44 S. W. 973, 19 Ky. Law Rep. 1965.

And it is further said in comment d, section 72, of the above quoted text that:

"Authority to receive payment does not include authority to institute legal proceedings, either by attachment or otherwise, nor authority to submit the claim to arbitration nor authority to place in the hands of an attorney for collection."

Applying these legal principles to the situation here presented, it logically follows that the appellant is not chargeable with the alleged misleading character of

anything done, alleged or adjudged in the unauthorized ex parte suit, Beard's testimony (the only evidence regarding Rawl's agency) being that he would take the money and give a receipt, but that he didn't "know what his duties were."

Such being here found to have been the situation and responsibility of the parties in bringing the ex parte suit, where unauthorized by the appellant, the allegations and representations made by the petition filed therein are altogether insufficient to show or support the charge of fraudulent intent or purpose on the part of appellant, through the representations thereby made, to mislead the appellee to his hurt or to unjustly enrich itself at the appellee's expense by its thereby inducing him to act thereon and turn over to it, through his grantor, Beard, the purchase price paid him without receiving consideration therefor. It is. our conclusion that the appellee has failed to bring himself within the vital principle of the invoked equitable rule, which, through the fiction of a promise implied in law, requires the party unjustly enriched at the expense of another to make restitution of the money received, where its retention is against good conscience.

This governing principle of the equitable rule of good conscience was by us thus stated in the case of Kellum v. Browning's Adm'r et al. 231 Ky. 308, 21 S. W. (2d) 459, 465:

"The term 'contract implied in law' is applied to a class of obligations created by law without regard to the assent of the parties upon whom the obligation is imposed—one which is not a contract obligation in the true sense, but a quasi contract, constructively imported by law, as where one has received money or its equivalent under such circumstances that in equity and in good conscience he ought not to retain it, in which case the owner may recover in an action in form ex contractu. People v. Dummer, 274 Ill. 637, 113 N. E. 934. As stated in 6 R. C. L. 588: 'The liability exists from an implication of law that arises from the facts and circumstances independent of agreement or presumed intention. The intention of the parties in such case is entirely disregarded, while in cases of express contracts and contracts implied in fact the intention is of the essence of the transaction. As has

been well said, in the case of consensual contracts the agreement defines the duty, while in the case of quasi-contracts the duty defines the contract. The duty which thus forms the foundation of a quasi-contractual obligation is frequently based on the doctrine of unjust enrichment.' ''

See further, Action of Assumpsit, sec. 9, subsec. c, 7 C. J. S. 114; Ball v. Clark, 179 Ky. 455, 200 S. W. 623; Holcomb v. Kentucky Union Company, 262 Ky. 192, 90 S. W. (2d) 25; 13 C. J. 244, sec. 10, subsec. 3; 14 Harvard Law Review 74; Lawson's Adm'rs v. Hansborough, 49 Ky. (10 B. Mon.) 147.

The cases relied on by appellee, announcing and applying this rule, deal with the right to have restitution made by one to whom money has been paid, due to mistake, resulting in the receiver's unjust enrichment at the expense of the one paying him the money.

We thoroughly approve the lower court's judgment in its application of this rule when decreeing that Beard, the party to whom the money was paid by mistake, should make restitution to Glasscock of the money so paid him for the land, where it is clear there has resulted an entire failure of consideration to him therefor, but we are constrained to conclude that the judgment is improper in so extending the rule as to adjudge that restitution of the money, mistakenly paid to Beard, should be also made to Glasscock by the appellant, a third party, to whom Beard, its debtor, had paid the amount received from Glasscock, which it, in good faith, had received and applied upon the debt he was then owing it.

This money having been so received, we conclude, by the appellant, without any showing made of bad faith, misrepresentation, or of its having wrongfully induced Glasscock, by either fraud or misrepresentation, to pay over his money to Beard for a worthless title, which the appellant would receive from him, it results that appellee's claim should not be treated as coming within the principle or reason of the equitable rule requiring restitution of the amount received, where its retention is against good conscience. As to this see case and text of Louisa National Bank v. Kentucky National Bank, 239 Ky. 302, 39 S. W. (2d) 497 and American Law Institute's Restatement of the Law of Restitution, sections 13 (comment a) and 14 (1).

This exact question as to the duty of a third party to make restitution of money paid it by its debtor and which it, as creditor, in good faith received and applied as a credit on or in payment of the debt, even though the money received was paid the debtor by mistake of fact or without consideration, was thoroughly considered and discussed by that most erudite and eminent jurist, Chief Justice Gray of the Massachusetts Supreme Court in the case of Merchants' Insurance Co. v. Abbott, 131 Mass. 397.

There, after a loss by fire, caused by the fraud of the assured Abbott, which had been adjusted by the insurers, Abbott assigned his claim under the policy to a creditor of his, Denny, Rice & Co., to secure a debt, and the insurers, at the request of the assured, paid to the creditor the amount of the policy so adjusted, both the insurers and the creditor being ignorant of the fraud invalidating the assigned insurance claim, the court held that the insurers might recover from the assured the sum so paid, notwithstanding his subsequent discharge in bankruptcy, but that they could not recover it back from the creditor, if it did not exceed the amount of the debt so secured, whether contracted before or at the time of the assignment.

The court, in discussing the equitable question presented of when the implied obligation to make restitution will be imposed to prevent the unjust enrichment of one at another's expense, said:

"There can be no doubt of the liability of Abbott in this action. If the money had been paid by the plaintiffs to him, it could be recovered back as money paid under the influence of a mistake between them and him as to the existence of a state of facts that would entitle him to the money. Kelly v. Solari, 9 M. & W. 54; Townsend v. Crowdy, 8 C. B. (N. S.) 477; Pearson v. Lord, 6 Mass. 81; Stuart v. Sears, 119 Mass. 143; Welch v. Goodwin, 123 Mass. 71 [25 Am. Rep. 24]; 2 Phil. Ins. secs. 1816, 1817. Although Abbott has not in fact received the money, the payment of the money by the plaintiffs at his request in discharge of his debt to the other defendants is equivalent to the receipt by Abbott of so much money, and is sufficient to enable the plaintiffs to maintain the action against him upon the special count, if not upon the general

count for money had and received. Emerson v. Baylies, 19 Pick. 55; Perry v. Swasey, 12 Cush. 36. * * *

"As to the other defendants a different question is presented. If, before receiving the money from the plaintiffs, they had known the true state of facts, and had participated in Abbott's Fraud, they would have been liable to refund the money. Martin v. Morgan, 3 Moore, 635; S. C. 1 Brod. & Bing. 289; Gow, 123. Mason v. Waite, 17 Mass. 560. But the report states that there was no evidence offered, nor was it contended at the trial, that they had any knowledge of the fraudulent conduct of Abbott, but it was conceded that they were wholly innocent parties.

"As to them, therefore, assuming the truth of the facts which they offered to prove, the case stands thus: They held a valid debt against Abbott. The assignment by Abbott to them was made in consideration of that debt, and to secure the payment thereof. The previous existence of the debt does not make the assignment the less a conveyance for value. Blanchard v. Stevens, 3 Cush. 162 [50 Am. Dec. 723]; Culver v. Benedict, 13 Gray 7; Ives v. Farmers' Bank, 2 Allen 236; Brooklyn City Railroad Co. v. National Bank, 102 U. S. 14, 58, 59 [26 L. Ed. 61]. There is no question of the validity or of the genuineness of the assignment. Having been made after the fire, and after the amount of the loss had been adjusted between the plaintiffs and Abbott, it was in legal effect an assignment of a claim of Abbott upon the plaintiffs for a certain sum of money. * * *

"The plaintiffs do not stand in the position of resisting a claim of Denny, Rice & Company on an alleged promise of the plaintiffs, in which case Denny, Rice & Company would have to prove a valid contract of the plaintiffs to pay to them or to Abbott, their assignor. But the plaintiffs are seeking to recover back from Denny, Rice & Company a sum of money which the plaintiffs have voluntarily paid to them, and which the plaintiffs assert to be wrongfully withheld from them by these defendants, and which they are therefore bound to prove that, as between these parties, the plaintiffs

have the better right to, and it is inequitable and unjust that these defendants should retain.

"The only contract of the plaintiffs was with Abbott, and the only mistake was as between them and him. The money was voluntarily paid by the plaintiffs in discharge of Abbott's supposed claim upon them under their policy, and to these defendants as the persons designated by Abbott to receive it, and was in legal effect a payment by the plaintiffs to Abbott. * * * In other words, the money was paid by the plaintiffs to these defendants, not as a sum which the latter were entitled to recover from the plaintiffs, but as a sum which the plaintiffs admitted to be due to Abbott, under their own contract with him, and which at his request and in his behalf they paid to these defendants, who at the time of receiving it knew no facts tending to show that it had not in truth become due from the plaintiffs to Abbott. * * * *As between the plaintiffs and these defendants, there was no fraud, concealment or mistake.* These defendants had the right to receive from Abbott the sum which was paid to them. The assignment which they presented to the plaintiffs was genuine, and was all that it purported to be. They hold the money honestly, for value, with the right to retain it as their own, under a title derived from Abbott, and independent of the fraud practiced by him upon the plaintiffs.

"*The case stands just as if the money had been paid by the plaintiffs to Abbott, and by Abbott to these defendants, in which case there could be no doubt that, while the plaintiffs could recover back the amount from Abbott, neither Abbott nor the plaintiffs could recover the amount from these defendants. The fact that the money, instead of being paid by the plaintiffs to Abbott, and by Abbott to these defendants, was paid directly by the plaintiffs to these defendants, does not make any difference in the rights of the parties.* The two forms do not differ in substance. In either case, Abbott alone is liable to the plaintiffs, and these defendants hold no money which ex æquo et bono they are bound to return either to Abbott or to the plaintiffs." (Italics ours.)

The facts of the quoted Abbott Case being alto-

gether similar and analogous to those found in the instant case and approving the decision of the like questions, there presented on such like facts, as being both sapient and sound, we are led to conclude that the decree of the learned chancellor, being not in accord with our views as herein expressed, is erroneous and the same is reversed to the extent that it adjudges that the appellant company shall restore to the appellee the $1900, with interest, which was received from appellee by Beard and by him paid over to appellant upon his debt. The case is therefore remanded, with the direction that the chancellor set aside such erroneous part of its decree, and enter in lieu thereof a decree denying to appellee a recovery against the appellant.

In view of our conclusion reached as to this question, we find it unneedful to discuss the other points raised upon the appeal, which are in effect disposed of by reason of our decision regarding this, the main question, upon which they rest.

Judgment reversed in part and affirmed in part.

Whole court sitting.