RENDERED:  JANUARY 19, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0038-MR

THOMAS MAGINNIS                                                    APPELLANT

|  | APPEAL FROM JEFFERSON FAMILY COURT |
|---|---|
| v. | HONORABLE GINA K. CALVERT, JUDGE |
|  | ACTION NO. 17-CI-500728 |

NINAMARY BUBA,
F/K/A NINAMARY B. MAGINNIS                                          APPELLEE

AND

NO. 2022-CA-0903-MR

NINAMARY BUBA,
F/K/A NINAMARY B. MAGINNIS                                          APPELLANT

|  | APPEAL FROM JEFFERSON FAMILY COURT |
|---|---|
| v. | HONORABLE GINA K. CALVERT, JUDGE |
|  | ACTION NO. 17-CI-500728 |

THOMAS MAGINNIS                                                    APPELLEE

AND

NO. 2022-CA-1239-MR

THOMAS MAGINNIS                                                                APPELLANT

                                   APPEAL FROM JEFFERSON FAMILY COURT
v.                                HONORABLE GINA K. CALVERT, JUDGE
                                       ACTION NO. 17-CI-500728

NINAMARY BUBA,
F/K/A NINAMARY B. MAGINNIS                                          APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; ECKERLE AND TAYLOR, JUDGES.

ECKERLE, JUDGE:  These consolidated appeals arise from post-judgment orders

of the Jefferson Family Court involving matters relating to the dissolution of the

marriage between Thomas Maginnis ("Maginnis") and Ninamary Buba f/k/a

Ninamary B. Maginnis ("Buba").  The first two appeals address matters that were

the subject of this Court's order of remand in the prior appeal.  Buba challenges the

Family Court's calculation of marital goodwill attributable to the marital business.

Maginnis argues that the Family Court relied on improper methods to calculate his

income for maintenance purposes and abused its discretion by failing to make the reduction of his maintenance obligation retroactive. We find no error or abuse of discretion in any of these matters.

In the third appeal, Maginnis challenges several rulings relating to matters that arose while the prior appeal was pending. He argues that the Family Court acted outside of its jurisdiction by allowing Buba to purchase the marital residence and abused its discretion by denying his request for reimbursement of mortgage payments he made prior to Buba's refinancing of the residence. We likewise find no error or abuse of discretion in these matters. Hence, we affirm in all three appeals.

## I. Factual and Procedural History

The underlying facts of this action were set forth in detail in the prior appeal. For purposes of this appeal, the following facts are relevant. Maginnis and Buba were married in 1986 and separated in 2017. In 1994, the parties started a business called Chimney Master. Maginnis performed the manual labor as a chimney sweep, and Buba performed some other tasks, such as bookkeeping. At the time of trial, Chimney Master had one other employee.

When the matter came to a bench trial in 2019, one of the primary issues concerned the valuation of Chimney Master and division of its marital interest. In her pretrial disclosure, Buba identified Chris Johnson, a certified public

accountant ("CPA"), to testify regarding his valuation of Chimney Master. Her pretrial disclosure stated that Johnson would testify as to the financial standing and earning potential of Chimney Master based on his analysis of the business and financial records from 2015 and 2016, the business's well-being, and current earnings potential. Johnson was expected to testify that Chimney Master is a going concern with excellent future income potential, but that he believed that not all invoice amounts for those years are accounted for in the operating bank account, totaling $45,000.

At trial, Johnson's testimony was largely consistent with his written report but differed in one important respect regarding the "enterprise value" as opposed to the "total value" of Chimney Master. In Johnson's written report, he concluded Chimney Master's "enterprise value" was $284,141, but in his testimony, he concluded Chimney Master's "total value" was $284,414. In Johnson's testimony and in his written report, he consistently stated that 70% of Chimney Master's value was personal goodwill (deemed "personal attributes" in the report) and 30% was enterprise goodwill (deemed "enterprise attributes" in the report). However, during his testimony he clarified that the 30% "enterprise value" of Chimney Master calculated out to about $85,000 of the total value of $284,414.

In his pre-trial disclosure, Maginnis identified C.P.A. Melissa DeArk as an expert concerning the business valuation of Chimney Masters. However, his disclosure did not specify DeArk's actual opinion. Consequently, when Maginnis attempted to call DeArk at trial as a "rebuttal witness," the Family Court refused to allow her testimony.

In its post-trial order, the Family Court divided the marital property. Based on Johnson's $284,141 valuation of Chimney Master, the Family Court awarded Chimney Master to Maginnis and ordered him to pay Buba half its value - $142,070. The Family Court noted that "transferable goodwill" was a factor in determining a business's value, but it nonetheless did not make any findings regarding Chimney Master's goodwill. In its order denying Thomas's CR[1] 59.05 motion, the Family Court stated that there was no evidence that a chimney-sweep business generated any personal goodwill.

The Family Court further concluded that Buba was entitled to maintenance, noting her disability and lack of other resources. In determining Maginnis's income, the Court took the average of the reported gross receipts on his 2015, 2016, and 2017 tax returns. The Family Court also pointed to the testimony that Maginnis receives cash payments that he does not report, and that Chimney

---

[1] Kentucky Rules of Civil Procedure.

Master directly pays some of his expenses. Consequently, the Family Court found

Maginnis's average annual income to be $160,308, against expenses of $2,075 per

month. Based on its other findings concerning Buba's income and expenses, the

Family Court ordered Maginnis to pay Buba maintenance in the amount of $3,300

per month.

In addition, the Family Court calculated the marital interest in the

residence. The Court found that the residence had a total equity of $74,924,

subject to Maginnis's non-marital interest of $42,886. Consequently, the Family

Court directed that the property be sold. Maginnis would be entitled to the first

$42,886 of the sale proceeds, and the parties would equally divide the remaining

sale proceeds. Finally, the Family Court directed Maginnis to pay maintenance to

Buba in the amount of $3,300 per month.

Maginnis appealed from the Family Court's division of the marital

interest in Chimney Master. The prior panel of this Court affirmed the Family

Court's exclusion of DeArk's testimony. However, the panel reversed the Family

Court's calculation of the marital value of Chimney Master, holding as follows:

> Thomas's [Maginnis's] next argument is that the
> family court's valuation of Chimney Master is fatally
> flawed because it ignores the analysis in Johnson's report
> and testimony that 30% of Chimney Master's value was
> due to enterprise goodwill, a marital asset, and 70% of
> Chimney Master's value was due to personal goodwill, a
> nonmarital asset. Pursuant to *Gaskill v. Robbins*, 282
> S.W.3d 306 (Ky. 2009), there is a distinction between

enterprise goodwill, which is a marital asset and can be divided in a dissolution, and personal goodwill, which is nonmarital.  We agree with Thomas that the judgment must be vacated on this basis.

"The valuation of a business is complicated, often speculative or assumptive, and at best subjective . . . .  Nonetheless, when a business is established during a marriage and is thus marital property, the trial court is required to fix a value and divide it between the spouses."  *Id.* at 311 (paragraph break omitted).  As it pertains to this case, quoting approvingly from *Yoon v. Yoon*, 711 N.E.2d 1265, 1268-70 (Ind. 1999) (citations and quotation marks omitted), *Gaskill* instructed family courts to allocate personal and enterprise goodwill when valuing and dividing a business:

> Goodwill in a professional practice may be attributable to the business enterprise itself by virtue of its existing arrangements with suppliers, customers or others, and its anticipated future customer base due to factors attributable to the business.  It may also be attributable to the individual owner's personal skill, training or reputation.  This distinction is sometimes reflected in the use of the term "enterprise goodwill," as opposed to "personal goodwill."

> Enterprise goodwill is based on the intangible, but generally marketable, existence in a business of established relations with employees, customers and suppliers . . . .  Enterprise goodwill is an asset of the business and accordingly is property that is divisible in a dissolution to the extent that it inheres in the business, independent of any single individual's

personal efforts and will outlast any person's involvement in the business . . . .

In contrast, the goodwill that depends on the continued presence of a particular individual is a personal asset, and any value that attaches to a business as a result of this "personal goodwill" represents nothing more than the future earning capacity of the individual and is not divisible . . . .

. . . .

In sum, to the extent a business or profession has goodwill (or has a value in excess of its net assets) it is a factual issue to what extent, if any, that goodwill is personal to the owner or employee and to what extent it is enterprise goodwill and therefore divisible property.

*Gaskill*, 282 S.W.3d at 314.

*Gaskill* does not explicitly state that all business valuations henceforth must contain an enterprise versus personal goodwill analysis. Nonetheless, we reject Ninamary's [Buba's] argument that the goodwill analysis in *Gaskill* was not mandatory here. First, as *Gaskill* recognized, Kentucky law had already recognized that "goodwill is a factor to be considered in arriving at the value of a business[.]" *Id.* at 312. Second, the family court in *Gaskill* did not engage in an enterprise versus personal goodwill analysis in dividing the medical practice – indeed, there was no Kentucky law at the time authorizing it to do so. Nonetheless, our Supreme Court found the family court erred by failing to conduct that analysis, explaining: "If the value of goodwill can be reasonably determined at all, the amount of enterprise goodwill, which is all that can be considered as marital property, can be determined. Therefore the trial court

-8-

erred in failing to consider personal and enterprise goodwill." *Id.* at 315 (paragraph break omitted). If it was error to not conduct an analysis which was not authorized under Kentucky law, it must be error to fail to conduct the analysis after the law has been settled.

Ninamary [Buba] also argues that *Gaskill* is inapplicable here because it dealt with valuing a professional business, unlike Chimney Master. Ninamary's [Buba's] argument places her in the unusual position of asking us to affirm the family court's decision to ignore her own expert's unrebutted testimony. Unfortunately, the parties have not cited, nor have we independently located, any binding authority definitively addressing whether *Gaskill* applies to valuing professional and nonprofessional business entities alike.

However, there is no explicit indication in *Gaskill* that it was intended to only apply to valuing professional businesses. Indeed, the Indiana Supreme Court's decision in *Yoon*, which our Supreme Court quoted at length and deemed "compelling" repeatedly refers to valuing "a business or practice" or "a self-employed business or professional practice" or "a business or profession[.]" *Gaskill*, 282 S.W.3d at 313-14 (*quoting Yoon*, 711 N.E.2d at 1268-70). Moreover, the practical effect of Ninamary's [Buba's] argument would be to permit family courts to ignore goodwill testimony when valuing nonprofessional businesses.

*Rabe v. Rabe*, No. 2011-CA-001972-MR, 2015 WL 3505232 (Ky. App. May 29, 2015) (unpublished), discussed by the parties, is – in addition to being unpublished and therefore not binding – materially distinguishable. Unlike the case at hand, in *Rabe* "no testimony was offered suggesting that any of the business's goodwill was personal." *Id.* at *3. When valuing a business, ignoring unrebutted goodwill evidence is not the same as failing to *sua sponte* create and assign personal goodwill to a business. In short,

though the issue may more often arise when valuing a professional entity, we conclude *Gaskill* also applies to valuing nonprofessional entities.

We are left here with the question of whether the family court erred by accepting Johnson's overall valuation while ignoring his component conclusion that only thirty percent of its value is marital (enterprise goodwill). Precedent has long held that a family court's valuation will be affirmed if it "reasonably approximated the [entity's] net value[,]" *Clark v. Clark*, 782 S.W.2d 56, 59 (Ky. App. 1990), and falls "within the range of the competent testimony[,]" *Roberts v. Roberts*, 587 S.W.2d 281, 283 (Ky. App. 1979).

A finder of fact does not have to accept blindly the valuation testimony and conclusions of an expert, even if they are unrebutted. *Cf.* 31A AM. JUR. 2D *Expert and Opinion Evidence* § 245 (2021). However, the finder of fact must provide a legitimate explanation for rejecting uncontradicted evidence or it will be reversed as acting in an arbitrary and unsupported manner. *Kroger Limited Partnership I v. Boyle County Property Valuation Administrator*, 610 S.W.3d 332, 338 (Ky. App. 2020).

The family court incorrectly indicated there was no goodwill evidence for it to consider and justified its division based on this faulty understanding of the evidence. The family court cannot be deemed to have reasonably approximated the marital value of Chimney Master when it failed to address unrebutted evidence of the entity's enterprise versus personal goodwill. Ignoring Johnson's goodwill conclusions led to a roughly $200,000 increase in the marital portion of Chimney Master's value. Therefore, we vacate the family court's valuation of Chimney Master and remand with instructions to address Johnson's goodwill conclusions by either: (1) accepting them and apportioning the value of Chimney Master in accordance therewith, or (2)

> rejecting them, and providing a sufficient explanation for
> so doing.

*Maginnis v. Maginnis*, No. 2019-CA-1090-MR, 2021 WL 2483877, at \*5-7 (Ky. App. Jun. 18, 2021) (unpublished), *discretionary review denied* (Jan. 11, 2022).

In light of its decision to vacate and remand the holding concerning the division of marital property, the prior panel also directed the Family Court to re-evaluate its maintenance award to Buba. *Id.* at \*7. The Court further noted that the Family Court failed to set out how it calculated Maginnis's net income. Thus, this Court held that "on remand the family court must ensure its findings are supported by substantial evidence and its mathematical computations are sufficiently explained." *Id.* at \*8.

On remand, the Family Court advised the parties that it would review the trial recording to render its new decision. On June 29, 2022, the Family Court entered its findings on the remanded issues. With respect to its calculation of Chimney Master's enterprise and personal goodwill, the Family Court found as follows:

> Ninamary [Buba] testified that she and Thomas [Maginnis] started the business together. She testified [that] she managed the business's collection efforts, handled the marketing, and performed other secretarial functions throughout the marriage until she was diagnosed with cancer. She acknowledged that Thomas [Maginnis] handled the client relations, labor, and the business's accounting outside of collections. Thomas [Maginnis] testified that Ninamary [Buba] was a stay-at-

-11-

home mother and primarily raised the parties' minor children in the business's early years. He acknowledged she managed some of the collection accounts, and that her contributions in the home allowed him to work full-time outside the home.

Ninamary's [Buba's] expert witness, Chris Johnson, CPA, testified he used a cash flow analysis approach to value Chimney Masters at $284,414. He extrapolated Chimney Master's earning potential over ten years, then discounted it for present value. He also stated he reviewed the company's 2017 draft tax return, which reflected a higher gross income and supported his calculation that the business would continue to increase in revenue. He based the bulk of his valuation on the company's 2015 and 2016 tax returns, customer invoices, bank statements, assets, and accounts receivable. He noted that he found discrepancies in Chimney Master's total invoiced amount and total income reported, which he testified reflected that Chimney Masters may not report all of its cash payments. However, on cross examination, he admitted that may be partially due to the business's inability to collect all outstanding invoiced accounts. Thomas' [Maginnis's] testimony was that he is not able to collect payment on all jobs performed. He testified his valuation did not deduct the business's liabilities because they were so egregiously comingled with personal debts.

Ultimately, he assigned a personal goodwill value of seventy percent (70%) and an enterprise goodwill value of thirty percent (30%). He attributed Thomas's [Maginnis's] skills as a chimney sweep, his reputation in the community, his health and age, to personal goodwill. He attributed the business's branding, its name, its repeat clients, and its one employee to enterprise goodwill. While Mr. Johnson's testimony did not provide ample examples, his report, which was admitted into evidence listed several applicable categories and rated each category on a scale of one to five in importance and zero

to five in existence within the company, which adequately supported his goodwill calculations. Thomas [Maginnis] also testified to his skill level, the type of work he performed, the impact gas fireplaces have taken on his business, and the personal relationships he has with the 1099 workers[2] he utilizes for bigger jobs. Thomas's [Maginnis's] testimony supported Mr. Johnson's goodwill calculations.

Thus, the Court accepts Mr. Johnson's valuation of $284,414, and divides the marital portion of that valuation, i.e., the enterprise goodwill of $85,324.[3] Thomas [Maginnis] shall pay Ninamary [Buba] $42,662, which is half of the business's marital value. Thomas [Maginnis] is awarded Chimney Masters.

With respect to the maintenance award, the Family Court noted that Buba has been unable to work since 2017. Buba's illness and actions taken by Maginnis have harmed her ability to earn money as an attorney. She earns approximately $479 per month in residual income from her legal practice, plus $1,529 in Social Security Disability, for a total income of $2,008 per month. Against this income, Buba reported reasonable expenses of $5,189, leaving a shortfall of $3,182.

The Family Court next addressed the conflicting evidence concerning Maginnis's income, ultimately adopting the amount set forth on his 2017 tax return

---

[2] A "1099 worker" refers to an independent contractor or other self-employed worker who completes particular jobs or assignments but is not an employee of the company. The name derives from IRS Form 1099, on which payments to such workers are reported.

[3] Enterprise value was 30% of $284,414, which equals $85,324.

- $107,200 per year or $8,933 per month. The Family Court also noted the evidence that Chimney Master pays many of his personal expenses, leaving him with monthly expenses of $2,075 per month. Thus, the Family Court found that Maginnis has a surplus of $6,858 per month. Based on these calculations and the adjusted allocation of marital property, the Family Court directed Maginnis to pay maintenance to Buba in the amount of $3,100 per month. Both parties separately appealed from this order. Additional facts will be set forth below as necessary.

## II. Appeal No. 2022-CA-0903-MR

In her appeal, Buba challenges the Family Court's calculation of the enterprise and personal goodwill business attributable to Chimney Master. Because this Court previously remanded the matter for additional findings on this question, the Family Court must strictly follow the mandate given in that case. *Buckley v. Wilson*, 177 S.W.3d 778, 781 (Ky. 2005). In a subsequent appeal following a retrial after remand, this Court's role is limited to whether the Trial Court properly construed and applied the mandate. *Inman v. Inman*, 648 S.W.2d 847, 849 (Ky. 1982). We review that question *de novo*. *See Univ. Med. Ctr., Inc. v. Beglin*, 432 S.W.3d 175, 178 (Ky. App. 2014). But where the Family Court has complied with this Court's mandate for remand, its factual findings will only be disturbed if clearly erroneous. CR 52.01; *Cherry v. Cherry*, 634 S.W.2d 423, 425 (Ky. 1982).

-14-

Buba complains that the Family Court's allocation of goodwill was not in accordance with the holding of *Gaskill v. Robbins*, *supra*. She maintains that the Family Court's 2019 judgment properly concluded that Chimney Master has no personal goodwill. However, this Court's prior opinion held otherwise, specifically holding that the goodwill analysis in *Gaskill* is applicable to professional and non-professional businesses alike. Right or wrong, that holding is now law of the case, and is binding on all parties, the Family Court, and this Court on subsequent appeal. *Williamson v. Commonwealth*, 767 S.W.2d 323, 325 (Ky. 1989) (citing *Martin v. Frasure*, 352 S.W.2d 817, 818 (Ky. 1961)). Consequently, the Family Court could not simply ignore Johnson's uncontested testimony about the personal goodwill attributable to the value of Chimney Master.

The Family Court clearly complied with this Court's directive on remand. The Family Court noted Johnson's uncontested testimony assigning 70% of the business's value to personal goodwill and 30% to enterprise goodwill. The Family Court also pointed out that Johnson gave specific reasons for these assignments – most notably Maginnis's skills as a chimney sweep, his reputation in the community, his health, and age. In compliance with this Court's mandate, the Family Court found no basis to reject his uncontested testimony. Although Buba points to other testimony that may have afforded a basis to reach a different result, we cannot say that the Family Court was compelled to reject Johnson's testimony.

Therefore, we will not disturb the Family Court's judgment dividing the marital equity of Chimney Master.

### III.    Appeal 2022-CA-1239-MR

In his first appeal, Maginnis argues that the Family Court abused its discretion in awarding maintenance to Buba. We review the Family Court's determination of maintenance for abuse of discretion in accordance with the standards set forth in KRS[4] 403.200. *Stipp v. St. Charles*, 291 S.W.3d 720, 727 (Ky. App. 2009). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Goodyear Tire and Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky. 2000). More specifically, a court abuses the discretion afforded it when "(1) its decision rests on an error of law . . . or a clearly erroneous factual finding, or (2) its decision . . . cannot be located within the range of permissible decisions." *Miller v. Eldridge*, 146 S.W.3d 909, 915 n.11 (Ky. 2004) (cleaned up).

KRS 403.200 sets out a two-part test to award maintenance. First, the Family Court must first find that the spouse seeking maintenance lacks sufficient property, including marital property, to provide for her reasonable needs. KRS 403.200(1)(a). Second, the Family Court must find that the spouse is unable to support herself through appropriate employment according to the standard of living

---

[4] Kentucky Revised Statutes.

-16-

established during the marriage. KRS 403.200(1)(b). Once that two-part determination is made, the Trial Court considers various factors in setting the "just" amount and duration of maintenance. KRS 403.200(2). Maginnis does not challenge the Family Court's findings under the first part of the statute.

Rather, Maginnis argues that the Family Court relied on improper methods to calculate his income, thus reaching an incorrect conclusion regarding his ability to meet his own needs while also meeting Buba's needs. KRS 403.200(2)(f). Maginnis focuses on the Family Court's reliance on the gross receipts reported on his 2017 tax returns. He contends that the use of gross receipts substantially overstates his actual income. Maginnis also argues that the Family Court improperly considered Buba's allegations that he collected unreported cash payments from the business.

We find no error or abuse of discretion. In our prior opinion, this Court directed the Family Court to explain how it calculated Maginnis's income for maintenance purposes. On remand, the Family Court noted that there was very little definitive evidence on that issue. Maginnis does not dispute that Chimney Master pays some of his personal expenses directly. The Family Court found Maginnis's testimony regarding the invoice discrepancies to be not credible. The Family Court found that the gross receipts reported on the 2017 tax returns were likely conservative, but still less than what Johnson estimated Maginnis's earning

potential to be. The Family Court further found that Maginnis has a surplus of $6,858 per month in excess of his reasonable expenses, and he is therefore able to pay maintenance to Buba. Under the circumstances, we cannot conclude that the Family Court clearly erred by adopting that amount as Maginnis's income.

Maginnis also contends that the Family Court abused its discretion when it refused to modify maintenance retroactively to the date of the 2019 decree. He asserts that Buba was unjustly enriched by the Family Court's failure to make the modified award retroactive. The Family Court has discretion to grant a retroactive award of maintenance from the filing of the motion to the entry of judgment. *Mudd v. Mudd*, 903 S.W.2d 533, 534 (Ky. App. 1995). However, the maintenance statutes generally contemplate prospective relief. *Pursley v. Pursley*, 144 S.W.3d 820, 828-29 (Ky. 2004). Thus, retroactive relief is usually appropriate only when circumstances delay a case from being submitted for decision. *Mudd*, 903 S.W.2d at 534 (citing *Ullman v. Ullman*, 302 S.W.2d 849, 850 (Ky. 1957)).

Such circumstances are not present in this case. In its prior opinion, this Court did not hold that the Family Court abused its discretion by awarding maintenance in the 2019 judgment. Rather, the prior panel merely held that the award must be reconsidered in light of the more specific findings regarding Maginnis's income and the new division of marital property. The Family Court's findings in its 2022 judgment marginally reduced Buba's maintenance award based

-18-

on these new findings. But the Family Court's determination was based mainly on new or more detailed evidence concerning the parties' income in 2019. Furthermore, in its October 7, 2022, order denying Maginnis's CR 59.05 motion, the Family Court explained that the reduction in maintenance was caused by Maginnis's failure to produce accurate and reliable income documentation. We conclude the Family Court did not abuse its discretion by declining to modify maintenance retroactively. *See Higbee v. Higbee*, 89 S.W.3d 409, 410 (Ky. 2002).

## IV. Appeal No. 2022-CA-0038-MR

Finally, Maginnis appeals from several post-judgment orders relating to the marital residence. Some additional facts and procedural history are necessary at this point. As discussed above, the Family Court's 2019 judgment calculated the equity in the residence, awarded Maginnis his non-marital interest, directed the sale of the residence, and ordered that the proceeds of the sale be divided accordingly. However, that sale never occurred.

After entry of the judgment on April 10, 2019, Buba filed a CR 59.05 motion asking the Family Court to vacate its ruling that the residence be sold, stating that she "lacked the stamina, mental and emotional strength, or physical ability to relocate." The Family Court denied the motion on July 2, 2019. Neither party appealed from this portion of the judgment.

-19-

Nevertheless, the parties were unable to agree on how to list the residence for sale. On August 1, 2019, Maginnis filed a motion to compel sale of the residence. Buba responded that she was taking the necessary steps, but the property required extensive repairs. Buba also filed a motion to hold Maginnis in contempt because he deducted the mortgage payments from his maintenance payments. Maginnis then requested a "clarification" of the April 10, 2019, judgment concerning his responsibility for the mortgage payments. Maginnis also requested orders directing Buba to reimburse him for mortgage payments made and to cease any further repairs of the property. The parties continued to have disputes over the choice of a real estate agent.

In an order entered on July 22, 2020, the Family Court held that Maginnis was not entitled to deduct the mortgage payments from maintenance. However, the Family Court directed that, rather than listing the property for sale, Buba should be permitted to buy Maginnis's interest. Therefore, the Court directed Buba to start making the mortgage payments and gave her 90 days to seek refinancing of the property. The Family Court's order also stated that, if Buba did not refinance the property within that time, the property shall be listed for sale. The Family Court then passed the remaining motions for a later hearing.

On August 3, 2020, Buba filed a motion to alter, amend, or vacate the July 22, 2020, order to allow her more time to refinance. The Family Court denied

-20-

the motion on September 28, 2020. That order was designated as final and appealable pursuant to CR 54.02.

Thereafter, the remaining motions came before the Family Court at a hearing on October 1, 2020. Thereafter, on October 8, 2020, the Family Court issued an order addressing those matters. In pertinent part, the Family Court first held that, under the April 10, 2019, judgment, Maginnis remained responsible for the mortgage payments until the property was sold. In addition, the Family Court noted that, due to the COVID-19 pandemic stimulus, the mortgage payment was in forbearance through much of 2020. Consequently, the Family Court concluded that Maginnis was not entitled to deduct the mortgage payments from his maintenance obligation and was not entitled to reimbursement of his mortgage payments. The Family Court's order did not address either refinancing or listing the property for sale.

On October 13, 2020, Buba moved the Family Court for an additional 90 days to secure refinancing of the property. In the alternative, she requested an order directing Maginnis to sign a quitclaim deed transferring the property to her. On October 16, 2020, Maginnis filed motions under CR 59.05, 60.01, and 60.02 to vacate the October 8, 2020, order with respect to the denial of his request for reimbursement of the mortgage payments.

On October 26, 2020, the Family Court entered an order directing Maginnis to sign a quitclaim deed transferring the residence to Buba within seven days. Maginnis signed the quitclaim deed on November 2, 2020, and Buba recorded the deed on November 10. Buba refinanced the property near the end of November 2020.

On December 8, 2021, the Family Court entered an Order denying Maginnis's October 16, 2020, motions. Among other things, the Family Court concluded that Maginnis's motion to compel the sale of the residence was moot because the property had already been transferred and refinanced. The Family Court also denied Maginnis's motion to alter, amend, or vacate the October 8, 2020, order denying his request for reimbursement of mortgage payments. The Family Court designated this order as final and appealable pursuant to CR 54.02. Maginnis filed his notice of appeal from this order on January 5, 2022.

Maginnis argues that the Family Court acted outside its particular-case jurisdiction when it altered the terms of its July 22, 2020, order giving Buba 90 days to obtain refinancing of the property. He correctly notes that the Family Court denied Buba's motion to allow her more time to refinance on September 28, 2020. Because CR 59.05 provides that a final judgment may be altered, amended, or vacated only within ten days after entry of the final judgment, Maginnis contends that the Family Court acted outside of its particular-case jurisdiction

-22-

when it subsequently allowed her additional time to refinance and ordered him to quitclaim the property. We disagree.

Even if the Family Court acted outside its particular-case jurisdiction, that issue may be waived if not timely raised. *Goodlett v. Brittain*, 544 S.W.3d 656, 660 (Ky. App. 2018) (citing *Commonwealth v. Steadman*, 411 S.W.3d 717, 724-25 (Ky. 2013)). Here, Maginnis did not raise any objection to the refinancing other than it was beyond the 90 days allowed in the July 22, 2022, order. He did not appeal or seek a writ from the order requiring him to sign the quitclaim deed. As noted above, the property was transferred to Buba in November of 2020.

Moreover, while the September 28, 2022, order included finality language, it was not a final and appealable order. Specifically, neither the July 22, 2022, order nor the September 28, 2022, order conclusively determined the rights of the parties in regard to that particular phase of the proceeding. *Francis v. Crounse Corp.*, 98 S.W.3d 62, 65 (Ky. App. 2002) (citing *Hale v. Deaton*, 528 S.W.2d 719 (Ky. 1975)). The July 22, 2022, order merely commanded the property to be listed for sale if Buba failed to secure financing within the prescribed time. The September 28, 2022, order denied Buba's request for additional time for refinancing. Under both orders, matters concerning that sale were reserved for later adjudication. Consequently, the Family Court retained the

-23-

authority to allow Buba to purchase the property as part of its continuing jurisdiction to enforce its orders.

As directed in the prior judgments, the property was sold and the proceeds divided. Maginnis does not ask this Court to vacate the transfer to Buba and direct the Family Court to order a sale of the property. *Morgan v. Getter*, 441 S.W.3d 94, 98-99 (Ky. 2014). In addition, Maginnis does not claim that he did not receive his allotted share of the sale proceeds. Thus, the matter is now moot.

Separately, Maginnis argues that the Family Court erred by denying his motion for reimbursement of mortgage payments that he made between the April 10, 2019, judgment and the July 22, 2022, order directing Buba to assume the mortgage payments until the property was sold. The Family Court repeatedly denied Maginnis's motion for reimbursement, concluding that he waived the issue by voluntarily making payments on the mortgage after the April 10, 2019, judgment and by failing to raise the issue until nearly a year later. We agree with Maginnis that he adequately reserved this issue in his October 16, 2020, motion.

However, this merely returns us to the underlying question – was Maginnis entitled to reimbursement of mortgage payments made between the April 10, 2019, judgment and the July 22, 2020, order directing Buba to assume responsibility for the payments? Maginnis argues that Buba has been unjustly enriched by these payments. Unjust enrichment is an equitable doctrine that serves

as a basis of restitution to prevent one person from keeping money or benefits belonging to another. *Haeberle v. St. Paul Fire & Marine Ins. Co.*, 769 S.W.2d 64, 67 (Ky. App. 1989) (citing *Union Central Life Ins. Co. v. Glasscock*, 270 Ky. 750, 110 S.W.2d 681 (1937)). "There are three elements that a party must meet in order to prevail on a claim of unjust enrichment: (1) benefit conferred upon defendant at plaintiff's expense; (2) a resulting appreciation of benefit by defendant; and (3) inequitable retention of benefit without payment for its value." *Collins v. Kentucky Lottery Corp.*, 399 S.W.3d 449, 455 (Ky. App. 2012).

As the Family Court recognized in its October 8, 2020, order, Maginnis did not show any compelling grounds for reimbursement. The mortgage was originally in Maginnis's sole name. Since the April 10, 2019, judgment did not address assignment of the mortgage, he was ultimately responsible for the payments until the property was sold. Maginnis unilaterally elected to withhold the mortgage payments from Buba's maintenance. But he did not elect to seek a credit for those payments until well into 2020. Furthermore, both parties were responsible for the delays in listing the property for sale in 2019, and the COVID-19 pandemic created additional obstacles to listing the property. And as the Family Court noted, the mortgage was in forbearance through much of 2020.

Arguably, Maginnis showed that his mortgage payments conferred a benefit. But since the property was to be sold, that benefit accrued to both parties.

Had the property been sold to a third party as planned, Maginnis would not have a right to any additional proceeds because he never requested that relief. Therefore, the fact that Buba ultimately obtained the benefit of those payments was not inequitable. Under the circumstances, we conclude that the Family Court did not abuse its discretion by denying his request for reimbursement or an offset for those payments.

Finally, Maginnis raises several issues relating to the Family Court's rulings on his discovery motions. Buba responds that these discovery issues relate to the issue of temporary maintenance, which is not appealable. Maginnis states that he is not appealing the issue of temporary maintenance, but he does not identify what those discovery matters concerned. Maginnis merely asserts that "[h]e is merely challenging the propriety of the [Family Court's] demonstrable bias by allowing one party to conduct discovery while prohibiting the other party from the same."

The orders at issue specifically related to discovery of records concerning Maginnis's income and Buba's ability to work. Furthermore, the orders referenced Buba's claim for *pendente lite* maintenance. This Court could only grant potential relief on these discovery issues by remanding the temporary maintenance issues for further proceedings. But as this Court's motion panel recognized, temporary maintenance orders are interlocutory in nature and generally

are not subject to appeal. *Atkisson v. Atkisson*, 298 S.W.3d 858, 864 (Ky. App. 2009). Maginnis does not request any other relief, such as recusal of the Trial Judge due to bias. Since the subject of the discovery orders is beyond the jurisdiction of this Court, we decline to address the issue further.

## V.    Conclusion

Accordingly, we affirm the orders of the Jefferson Family Court in all three appeals.

ALL CONCUR.

BRIEFS FOR APPELLANT/CROSS-APPELLEE:

Allison S. Russell
Shanna R. Ballinger
Louisville, Kentucky

BRIEFS FOR APPELLEE/CROSS-APPELLANT:

Robert Frederick Smith
Louisville, Kentucky